570 S.E.2d 388 (2002)
257 Ga. App. 93
In the Interest of R.N.R. et al., children.
No. A02A1196.
Court of Appeals of Georgia.
August 20, 2002.
Edward R. Downs, Jr., for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Foster & Foster, *389 Donald R. Foster, Stephanie B. Hope, Jonesboro, for appellee.
MIKELL, Judge.
The mother of R.N.R., R.E.R., M.R., and C.C. appeals the juvenile court's order authorizing the Clayton County Department of Family & Children Services (the Department) to cease its efforts to reunify the children with the mother. The juvenile court found by clear and convincing evidence that reasonable efforts to reunify the family would be detrimental to the children because the mother had physically neglected them. Finding no error, we affirm the court's order.
1. The mother first argues that the Department presented insufficient evidence to support the juvenile court's order. We disagree.
In order to approve the Department's recommendation that a reunification plan is not appropriate, a juvenile court must determine by clear and convincing evidence that reasonable efforts to reunify a child with his or her family will be detrimental to the child. OCGA § 15-11-58(h).[1] On appeal from the juvenile court's order, this Court "neither weighs the evidence nor determines the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met."[2]
The evidence adduced in the instant case shows that at the time of the hearing, M.R. was seven years old, twins R.N.R. and R.E.R. were three years old, and C.C. was four months old. Constance Moore, a case manager, testified that the Department became involved with the family shortly after the birth of C.C. When the baby's father brought the other three children to the hospital to visit their mother, a nurse commented that she did not realize that the mother had two other babies. When the mother replied that the twins were over two years old, the nurse contacted the hospital social worker, who called the Department.
The children were removed from their mother's custody two days later. The twins weighed only 13 pounds each. Adrianne Hudson, a child protective services investigator, testified that the hospital staff described all three children as "extremely underweight... lethargic, ashen." Indeed, photographs of the three eldest children taken that day and introduced into evidence depict them as severely malnourished. In particular, the twins appear emaciated, with swollen, distended stomachs and protruding ribs.
Dr. Romeo Morales, a pediatrician, testified that all three children were suffering from severe malnutrition to the point of starvation. Dr. Morales advised that if the children had continued on their course of failing to gain weight, they probably would have died. Evidence showed that the twins gained between 13 and 17 pounds within six months after they were placed in foster care. Dr. Morales recommended that they not be returned to their mother.
Dr. Morales testified that the twins had been diagnosed with delayed development as well as malnutrition. Evaluations performed when they were 30 months old showed that R.N.R. and R.E.R. were functioning as 14- and 15-month-old children, respectively. Moreover, M.R. who was nearly seven, had the bone density of a four-year-old child. Significantly, C.C., who was removed from his mother shortly after birth, suffers no developmental problems.
I.W. James, the foster mother of R.N.R., R.E.R., and C.C., testified that the twins were starving when they came into her care. She also recounted that R.E.R. could not sit up, R.N.R. could barely sit up, and neither child could talk or crawl. James testified that R.E.R. was extremely frail and had arms "like a little bird." She said she had seven children of her own and had "never in my life seen kids like this before." According to James, by the time of the hearing, R.N.R. could run, R.E.R. could walk, and both children had learned to talk.
The Department also presented the testimony of M.R.'s foster mother, Sharon Booker, who recounted that M.R. hoarded food and frequently vomited when she first entered *390 foster care. In addition, although she was over six years old, M.R. was not toilet-trained and still wore diapers. By the time of the hearing, M.R. had learned to use the bathroom and only wet herself occasionally, Booker testified.
Dr. Jeff Pipe, a licensed clinical psychologist who evaluated the mother, testified that she manifested a high level of denial of any personal problems or weaknesses and attempted to present herself as unrealistically virtuous. In fact, Dr. Pipe testified, the mother not only failed to recognize her parenting deficits, she believed that she was "so competent as a parent as to be well beyond most parents." Dr. Pipe concluded that the mother was "not at a point" where she could attempt to improve her parenting skills.
Valerie Wells, a parent aide who supervised the mother's visits with the children, testified that the mother told the twins after they gained weight that they looked "like Sumo wrestlers." Moore recounted that the mother told M.R. during visits that she "must be living in Satan's house." According to Moore, the mother came to several visits appearing disheveled and lethargic, and she repeatedly refused the Department's request that she undergo drug testing.
The mother claimed that she never denied food to the children. In fact, she testified that she fed them adequately. She attributed the twins' appearance to their prematurity and low birth weight. The mother also claimed she was told that the twins would not grow as quickly as other babies because they had been on a ventilator. Moreover, she alleged that the twins were able to sit up and crawl when they were taken from her custody. She admitted that she had not taken them to the doctor for two years, claiming that she lacked transportation. However, the mother subsequently testified that she continued to obtain medical care for herself, to treat lupus.
The evidence recited above amply supports the juvenile court's decision to grant the Department's motion for nonreunification. As stated earlier, OCGA § 15-11-58(h) provides that reunification services should be terminated when efforts to reunify a child with his or her family would be detrimental to the child.[3] In addition, the statute establishes a presumption that reunification services should not be provided if the juvenile court finds by clear and convincing evidence that any of the grounds for terminating parental rights exist.[4] One of the grounds for terminating parental rights is physical neglect of the children.[5] In the case at bar, evidence of the children's starvation coupled with the mother's complete denial of responsibility for their emaciated condition amply supports the juvenile court's findings that the mother physically neglected the children and that reunification would be detrimental to them.
2. The mother next contends that the juvenile court's failure to enter an order incorporating the Department's reunification plan violated her due process rights by effectively denying her the opportunity to challenge or appeal such a plan. This argument is meritless. The juvenile court recognized that the plan was never court-ordered because the mother and grandmother requested three continuances on the disposition of the plan. It is a well-settled appellate rule that one cannot complain of errors or rulings which his own conduct procured or aided in causing.[6] Even if the error were not waived, the mother cannot demonstrate that she was harmed by the juvenile court's failure to enter an order approving the plan because the court stated that it would not consider the plan in determining whether to grant the Department's motion for nonreunification.
3. Finally, the mother argues that the juvenile court deprived her of her right *391 to be free from unreasonable governmental seizure of her minor children by requiring her to sign a reunification plan. As noted in Division 2, however, the court's order was not based on the plan or the mother's failure to comply with it. Accordingly, this enumeration is meritless.
Judgment affirmed.
ANDREWS, P.J., and PHIPPS, J., concur.
NOTES
[1] See In the Interest of J. P., 253 Ga.App. 732, 735, 560 S.E.2d 318 (2002).
[2] In the Interest of R. U., 239 Ga.App. 573, 577(1), 521 S.E.2d 610 (1999).
[3] See In the Interest of K. M., 240 Ga.App. 67-68, 522 S.E.2d 667 (1999).
[4] OCGA § 15-11-58(h)(3).
[5] OCGA § 15-11-94(b)(4)(B). See In the Interest of J.L. K., 245 Ga.App. 860, 861, 539 S.E.2d 507 (2000).
[6] Weldy v. State, 239 Ga.App. 849, 850(2), 521 S.E.2d 858 (1999); Wallace v. Swift Spinning Mills, 236 Ga.App. 613, 617(2), 511 S.E.2d 904 (1999).