A02A1067. IN THE INTEREST OF C. R., a child.
(570 SE2d 609)

MIKELL, Judge.

The mother of C. R. appeals the juvenile court's order permitting the child's temporary custodian, his paternal grandmother, to obtain immunizations for him, over the mother's religious objections. Because OCGA § 15-11-13 gives the custodian of a deprived child the right to determine his medical care, we affirm.

The relevant facts are undisputed. C. R. was born on February 28, 2001. He was immediately placed in the custody of the Clayton County Department of Family & Children Services (the Department) based on evidence that his siblings were malnourished to the point of starvation.[1] An order finding him deprived was not appealed. A subsequent order granting the Department's motion to cease its efforts to reunify the mother and her children has been affirmed on appeal.[2]

Both of C. R.'s grandmothers sought to gain custody of him, and, in November 2001, the court awarded temporary custody to C. R.'s paternal grandmother, Lynette Norman. The order authorized Norman to obtain for the child physical examinations, ordinary medical care, and such additional medical care and treatment as deemed necessary by a licensed physician. One week later, the juvenile court held a hearing to consider the mother's religious objections to Norman's desire to have the child immunized.

At the hearing, the mother described her religious objections as follows: "Well, basically I, as a Christian, I believe every word that's in the Bible from Genesis to Revelation, and the Bible also states that we should believe God for our healing, and that puts vaccinations . . . at odds with what the Bible states." However, the mother also testified that the church to which she belonged, the World

---

[1] *In the Interest of R. N. R.*, 257 Ga. App. 93 (570 SE2d 388) (2002).
[2] Id.

Changers Church International, did not disagree with the practice of immunizing children.

The mother further testified that she had submitted an affidavit to the Department exempting her children from immunizations on religious grounds pursuant to OCGA § 31-12-3. That statute empowers appropriate governmental agencies to require "persons located within their respective jurisdictions to submit to vaccination against contagious or infectious disease where the particular disease may occur, whether or not the disease may be an active threat."[3] Subsection (b) provides: "In the absence of an epidemic or immediate threat thereof, this Code section shall not apply to any person who objects in writing thereto on grounds that such immunization conflicts with his religious beliefs."[4]

The juvenile court rejected the mother's objection, relying on OCGA § 15-11-13, which governs the rights of a person to whom the court has awarded custody of a deprived child:

> A custodian to whom legal custody has been given by the court under this article has the right to physical custody of the child, the right to determine the nature of the care and treatment of the child, including ordinary medical care, and the right and duty to provide for the care, protection, training, and education and the physical, mental, and moral welfare of the child, subject to the . . . remaining rights and duties of the child's parents or guardian.

The court observed that the only remaining parental rights under this Code section that have been recognized by the appellate courts are the rights to consent to an adoption of the child[5] and to visit with the child.[6] Accordingly, the court ruled that the statute gave Norman the authority to have the child immunized.

On appeal, the mother contends that the juvenile court's order violates her right to freedom of religion as guaranteed by the United States and Georgia Constitutions. This argument misses the point. The mother forfeited her right to control her child's medical care when she lost custody of him, even though the loss may be temporary.[7]

---

[3] OCGA § 31-12-3 (a).

[4] See also OCGA §§ 20-2-771 (e); 49-4-183 (b) (10) (C) (providing for religious exemptions to children's immunizations as a condition of entering school or day care and of receiving public assistance).

[5] *O'Neal v. Wilkes*, 263 Ga. 850, 852-853 (3) (439 SE2d 490) (1994); *Skipper v. Smith*, 239 Ga. 854, 856 (2) (238 SE2d 917) (1977).

[6] *In the Interest of K. B.*, 188 Ga. App. 199, 200 (1) (372 SE2d 476) (1988).

[7] OCGA § 15-11-13.

Because the mother did not appeal the juvenile court's order finding C. R. to be a deprived child, she is bound by that determination.[8] A deprived child is defined as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[9] "It has been held that to authorize . . . even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent. . . ."[10] In affirming the nonreunification order concerning C. R., we held that clear and convincing evidence supported the juvenile court's determination that the mother was unfit and that grounds existed for terminating her parental rights.[11] Accordingly, she lost the right to control her child's medical or religious decisions.

We note that the mother does not challenge the constitutionality of OCGA § 15-11-13. Rather, she argues that her right to object to her child's immunizations on religious grounds is a residual parental right under the statute. We cannot agree.

Religious conflicts in child custody disputes are nothing new. In such proceedings between parents, the "person awarded sole custody of a child shall have the rights and responsibilities for major decisions concerning the child, including the child's education, health care, and religious training, and the noncustodial parent shall have the right to visitation."[12] This is consonant with the deprived child custodian's "duty to provide for the care, protection, training, and education and the physical, mental, and moral welfare of the child."[13] We do not believe the legislature intended to bestow upon the parents of a deprived child rights greater than those granted to noncustodial parents under OCGA § 19-9-6 (4).

For these reasons, we hold that the right to lodge religious objections to a child's immunizations pursuant to OCGA § 31-12-3 (b), § 20-2-771 (e), or § 49-4-183 (b) (10) (C) is not a residual right of the child's parents under OCGA § 15-11-13. It follows that the juvenile court's order permitting C. R. to be immunized should be affirmed.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[8] See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529 SE2d 141) (2000).

[9] OCGA § 15-11-2 (8) (A).

[10] *In re D. H.*, 178 Ga. App. 119, 124 (342 SE2d 367) (1986).

[11] *In the Interest of R. N. R.*, supra at 95 (1).

[12] OCGA § 19-9-6 (4). See *Appelbaum v. Hames*, 159 Ga. App. 552, 553-554 (284 SE2d 58) (1981).

[13] OCGA § 15-11-13.

DECIDED AUGUST 23, 2002.

*Edward R. Downs, Jr.*, for appellant.
*Foster & Foster, Donald R. Foster, Kasey G. Wyatt, Teresa O. Weiner*, for appellee.