S12A1889. THE STATE v. HARRIS.
(734 SE2d 357)

HINES, Justice.

The State appeals the superior court's grant of a new trial to Xavier Harris, who was found guilty of felony murder and related crimes in connection with the August 1, 2005 fatal shooting of Ron Strozier and the conspiracy to commit aggravated assault with a deadly weapon of an individual known only as "D-Bone." For the

---

[2] Below, Davis argued that the introduction of the evidence was "plain error."

reasons that follow, we affirm.

In March 2006, a Fulton County grand jury returned a 17-count indictment against Harris and four other men: Michael Grissom, Markell Dorsey, Rico Sims, and Darnell Amaker. Harris was named in all but four of the counts, which included charges of malice and felony murder, aggravated assault with a deadly weapon, conspiracy, criminal damage to property, and firearms possession.[1] The defendants were all tried together, and the State argued that the crimes were related and part and parcel of the same conspiracy.

The State's theory of the case was that a chain of events preceded the fatal incident, beginning with a physical altercation between Dorsey and D-Bone at a convenience store on July 31, 2005, during which D-Bone bested Dorsey. Seeking retribution, Dorsey enlisted his friend Sims to confront D-Bone; they walked through a wooded area between two apartment complexes in order to do so. Sims emerged from the woods wearing a bullet proof vest and armed with an assault rifle. D-Bone, and his group of friends, which included Strozier, waylaid Sims and took his vest and rifle. The following day, August 1, 2005, Harris accompanied Dorsey, Sims, Amaker, and Grissom to the "wooded cut" leading to one of the apartment complexes. The State maintained that Harris and the four co-defendants conspired to shoot Strozier and D-Bone, and "shoot up" D-Bone's truck. As they walked through the cut to confront D-Bone, the men encountered Strozier, and Strozier was fatally shot.

Harris, who was 19 years old at the time of the crimes, related his version of events to police. During the fatal encounter, he heard a loud gunshot, like that of a shotgun, and then he ran, and that after running from the scene of the shooting, he met with the co-defendants

---

[1] Harris was charged with Count 1 – the malice murder of Strozier; Count 2 – the felony murder of Strozier while in the commission of aggravated assault with a deadly weapon against Strozier; Count 3 – the felony murder of Strozier while in the commission of conspiracy to commit aggravated assault with a deadly weapon against Strozier; Count 4 – the felony murder of Strozier while in the commission of aggravated assault with a deadly weapon against "D-Bone"; Count 5 – the felony murder of Strozier while in the commission of conspiracy to commit criminal damage to property in the first degree; Count 7 – the aggravated assault with a deadly weapon against Strozier; Count 8 – conspiracy to commit aggravated assault with a deadly weapon against Strozier; Count 9 – conspiracy to commit aggravated assault with a deadly weapon against "D-Bone"; Count 10 – conspiracy to commit criminal damage to property in the first degree; Count 14 – the aggravated assault of Christina Green; Count 15 – possession of a firearm during the commission of the murder and aggravated assault of Strozier; Count 16 – possession of a firearm during the commission of the aggravated assault of Green; and Count 17 – possession of a firearm during the commission of multiple crimes against "D-Bone." Counts 6, 11, and 12 charged only Dorsey with the felony murder of Strozier while in the commission of possession of a firearm by a convicted felon, possession of a firearm by a convicted felon, and theft by receiving stolen property (auto); Count 13 charged solely Sims with theft by receiving stolen property (auto).

at Dorsey's apartment. Later Harris rode with Sims and Grissom in a vehicle Sims had stolen, to another apartment complex looking for D-Bone; Dorsey and Amaker were in a second vehicle in the hunt for D-Bone. They encountered D-Bone in his pick-up truck, and a shoot-out ensued. Harris fled this scene after the vehicle in which he was riding crashed. Dorsey, Amaker, Grissom, and Sims were arrested. Harris turned himself in to police on August 18, 2005.

The jury found Harris guilty of Strozier's felony murder predicated on the conspiracy to commit aggravated assault with a deadly weapon against Strozier, conspiracy to commit aggravated assault with a deadly weapon against D-Bone, and conspiracy to commit criminal damage to property in the first degree; voluntary manslaughter; involuntary manslaughter based upon reckless conduct; and reckless conduct. Harris was also found guilty of conspiracy to commit aggravated assault against D-Bone, conspiracy to commit criminal damage to property in the first degree, and possession of a firearm during the commission of multiple crimes against D-Bone. Harris was either found not guilty of the remaining charges or they were resolved by directed verdicts of acquittal.

Harris moved to vacate his convictions and for a new trial; however, by that time the judge who presided over the trial had retired, and a different judge considered the motion for a new trial. This judge granted Harris a new trial on the general grounds, expressly finding that the verdicts were decidedly and strongly against the weight of the evidence, contrary to the law and principles of equity and justice, and that the evidence warranted the court exercising its discretion pursuant to OCGA § 5-5-50 to grant Harris a new trial.

OCGA § 5-5-50 provides:

> The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge.

This Court is to apply this standard of review in a criminal case in which there is the first grant of a new trial on the general grounds. *O'Neal v. State*, 285 Ga. 361, 362-363 (677 SE2d 90) (2009). Generally in this situation, the trial court is given a significant amount of deference to exercise its sound discretion because it was an observer of what transpired at trial; indeed, the trial judge is sometimes spoken of as the "thirteenth juror." Id. at 362. OCGA § 5-5-50 acknowledges this deference to the trial court by mandating a standard of

review that limits the appellate court's power to reverse a trial court's first grant of new trial. Id. at 362.

It is certainly true that where, as in this case, the judge who hears the motion for a new trial is not the same judge as the one who presided over the original trial, the discretion of the successor judge is narrower in scope. *Head v. CSX Transp., Inc.*, 271 Ga. 670, 672 (2) (524 SE2d 215) (1999). Nevertheless, this Court is restricted to reversal of the grant of the new trial only if the successor judge abused his or her discretion. Id. at 672 (3). It appears that prior to rendering the decision to grant Harris a new trial, the successor judge thoroughly reviewed the case, and presided over a full hearing in the matter. The judge made independent evaluations not only about Harris's involvement in the crimes but about the culpability of the co-defendants, and concluded, inter alia, that Harris got "caught up" in the "neighborhood feud" and was "just a peripheral figure." Under these circumstances, we find no abuse of the successor court's discretion in granting Harris a new trial on the general grounds.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 19, 2012.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney,* for appellant.
*Long D. Vo,* for appellee.