In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A1006.  THE STATE v. HILL.

HINES, Presiding Justice.

This is an appeal by the State from the grant of David Hill's extraordinary motion for new trial following his convictions and sentencing for felony murder and two aggravated assaults.  For the reasons which follow, we reverse.

In 2002, Hill, Orlando Culler, and Trayeon White were jointly tried and convicted of the November 18, 2001 felony murder of Alvita Waller and the aggravated assaults of Terrell Mills and Anthony Hunter.   Hill was sentenced to life in prison for felony murder and to two probated sentences of fifteen years for two counts of aggravated assault, to be served concurrently to each other and consecutively to the sentence for felony murder.  Hill filed a motion for new trial on December 13, 2002, and amended it on April 18, 2003; the motion was denied on July 17, 2003.  Hill and his co-defendants appealed to this Court, and their convictions were affirmed in 2004.  See *Culler v. State,* 277 Ga. 717 (594

SE2d 631) (2004). Approximately eight years later, on April 11, 2012, Hill filed an extraordinary motion for new trial, which he amended on April 23, 2013, and again on May 29, 2013. The judge who presided over the trial and subsequent motions had retired, so a successor judge heard Hill's extraordinary motion for new trial. Following the hearing, that court issued an order on October 22, 2013, granting Hill a new trial. The State filed a motion for reconsideration on October 24, 2013, and the court entered an order on November 6, 2013, withdrawing its prior order. After another evidentiary hearing, on December 30, 2013, the successor court again granted Hill's extraordinary motion for new trial.

In the prior direct appeal, this Court noted that the evidence authorized the jury to find that Hill, Culler, and White were at a home in Bibb County when they decided to go to a nearby house, located on Amos Street, and retaliate for the death of Culler's brother, who had been killed the previous day; along with several others, the three men, who were armed with handguns, traveled to Amos Street in two cars; they attempted to kick in the front door of the Amos Street house, and when that failed, they began firing random shots into the house; one of the three people inside the house, Waller, was shot in the head and killed; the

2

intended target, Mills, was shot in the shoulder and injured; Hunter, who was asleep in a back bedroom when the shooting occurred, was left unharmed once the gunfire ended; an eyewitness testified that he watched the shooting and heard shots being fired from three distinct guns; Culler later told a friend that he had fired shots into the home, and thought he had killed Waller; ballistics reports identified shell casings recovered from the scene as having been fired from at least two different guns, possibly more; and DNA testing identified a red baseball cap recovered from the front yard of the Amos Street house as having been worn by Hill.

In his extraordinary motion for new trial, Hill alleged that he was entitled to a new trial because of newly-discovered evidence involving a witness named Shaneka Jackson ("Shaneka"). His claim was based on three arguments: (1) Hill's rights to due process under *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963) were violated because in 2001, Shaneka told Detective Carl Fletcher, during his initial investigation, that Hill was at her house at the time of the shooting, that the State failed to disclose this information to Hill prior to trial, and that this alibi information was not included in the detective's police report or his transcribed interview with Shaneka; (2) under *Timberlake*

3

*v. State*, 246 Ga. 488 (271 SE2d 792) (1980), if Shaneka's testimony had been admitted at trial, there is a strong likelihood that the verdicts would have been different; and (3) the newly-discovered alibi evidence shows Hill's actual innocence, and this overcomes the circumstantial evidence upon which Hill was convicted.

The successor court found, inter alia, that Shaneka's affidavit testimony was credible and reliable, that Fletcher's investigatory practices were unreliable and not credible, and that a "fully-informed" jury should decide the question of Hill's involvement.[1]  It found in favor of Hill on all three of the bases of his claim of newly-discovered evidence, vacated his convictions, and granted him a new trial.

The determination of this appeal must begin with an analysis of the precepts of appellate review of the ruling.  It is certainly true that this Court will not disturb the first grant of a new trial on the general grounds in a criminal case unless the trial court abused its discretion in granting it and the law and facts

---

[1]The successor court rejected the State's contention that a "Motion to Vacate and Void" filed by Hill in 2004, was substantially an extraordinary motion for new trial, and therefore, that the present motion was a second extraordinary motion for new trial, which was procedurally barred by OCGA § 5-5-41 (b).

require the verdict rendered. OCGA § 5-5-50[2]; *State v. Harris*, 292 Ga. 92, 94 (734 SE2d 357) (2012). The trial court is to be given a significant amount of deference in the exercise of its discretion in such a situation because it was an observer of what transpired at trial; indeed, the trial judge has been referred to as the "thirteenth juror." *State v. Harris*, at 94. But, there is a significant difference in consideration of a motion for new trial and an extraordinary motion for new trial; extraordinary motions for new trial are "not favored," and "a stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on that ground." (Citation and punctuation omitted.) *Crowe v. State*, 265 Ga. 582, 590-591(15) (458 SE2d 799) (1995). Furthermore, the discretion of a successor judge is narrower in scope than that of the judge presiding at trial, and the successor judge's factual rulings are not given the broad deference given to findings by the presiding judge. *State v. Harris* supra at 95; *State v. Clements*, 289 Ga. 640 (1) (715 SE2d 59) (2011). While this Court will still accord substantial deference

---

[2]OCGA § 5-5-50 provides:

The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge.

5

to a trial court's decision on an extraordinary motion for new trial and review its ultimate ruling for an abuse of discretion, such discretion is not unfettered; the trial court must exercise its discretion in conformity with the governing legal principles, and the facts that the court is to find and those which must be evaluated by this Court are those relevant to determining whether the legal requirements have been satisfied. *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014), citing *State v. Pickett*, 288 Ga. 674, 679 (4) (d) (706 SE2d 561) (2011).  Indeed, if the trial court significantly misapplies the law or makes a clear error with regard to a material finding of fact, the trial court's exercise of discretion can be upheld only if this Court can reach the conclusion that had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment. *State v. Pickett*, supra at 679 (4) (d).  Otherwise, there is an abuse of discretion as a matter of law.  That is precisely the situation in this case.  The successor court clearly erred in regard to material factual findings which resulted in that court's improper grant of Hill's extraordinary motion for new trial.  Additionally, the successor court employed, in part, an erroneous legal analysis in finding in favor of Hill.

The linchpin of the successor court's ruling is Shaneka's 2012 affidavit,

to which the court gave full credit. However, there was no evidence, via Shaneka's affidavit or otherwise to support the successor court's determination that prior to trial, Shaneka told Detective Fletcher about an alibi for Hill. Her 2012 affidavit did not include an averment that she provided Fletcher with any alibi information when he interviewed her.[3] Moreover, the vague averments in the affidavit did not provide any concrete evidence that Hill was not or could not have been involved in the fatal shooting and assaults for which he was convicted. Despite this lack of proof that Shaneka gave Fletcher exculpatory information, the successor court leaped to the unwarranted conclusion that she had provided such information. The court then used this erroneous finding of fact as the foundation for its rulings in favor of Hill's claims.

---

[3]Shaneka's 2012 affidavit stated in relevant part as to Hill's alibi that on Sunday, November 18, 2001, she was living near the crime scene; that she was out socializing on Saturday evening, November 17, 2001, and that in the early morning hours of November 18, several people returned to her home to retrieve their vehicles; that Hill and White were in her home after midnight; that when she returned home, she immediately went to bed but her friends (unnamed) were still in the house; that although she was in the bedroom, she could hear what was said; that "at some point" a neighbor came to the house and said that Culler's brother had been shot to death; that she heard "people" in her living room reacting emotionally to the news; that Hill, White, and "others" left together shortly after learning of the death; that she "heard gunshots outside, somewhere in the neighborhood, after the news about [Culler's brother] was delivered but before the men departed"; shortly after the crimes at issue, Fletcher had her brought to his office and after Fletcher and she "spoke off the record for a while," she gave a statement which was typed as she spoke; and that during Fletcher's questioning of her, he expressed dissatisfaction with what she was able to tell him and wanted her to incriminate Hill, White and others, offering her inducements and making threats.

In regard to Hill's claim of a violation of *Brady v. Maryland*, Hill had to show that: (1) the State, which would include any part of the prosecution team, possessed evidence favorable to him; (2) he did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed such favorable evidence; and (4) a reasonable probability that the outcome of the trial would have been different had the favorable evidence been disclosed to the defense. *State v. James*, 292 Ga. 440, 441 (2) (738 SE2d 601) (2013). And, Hill did not meet such burden.

Again, Hill failed to show that the State either possessed or suppressed any favorable evidence, because there is no evidence that Shaneka actually gave Fletcher the alleged alibi information. Indeed, her 2001 statement to Fletcher, which was provided to the defense prior to trial along with a witness list naming Shaneka, was anything but exculpatory as to Hill. She named her then boyfriend, two cousins, and an acquaintance, who allegedly were in her apartment in the early morning hours prior to the shooting but did not mention Hill. She also stated that she was in another room when she heard an individual or individuals knock on the apartment door and enter the apartment; that she heard loud talking and cursing after someone said that Culler's brother had been

8

killed, and in fact, she told "everybody to hold it down"; that she heard the individuals who had arrived at the apartment leave; and that she heard gunshots about five minutes after the unnamed individuals left her apartment. Thus, even if Hill was one of the unnamed individuals who exited the apartment, and the gunshots heard by Shaneka were indeed those resulting in the present crimes, the expressed time line would not rule out Hill's involvement. Thus, questions of Hill's diligence in ascertaining Shaneka's knowledge about the night of the shooting, or any potential impact on the outcome of trial need not be reached.

It was also error for the successor court to find that Hill satisfied the criteria of *Timberlake v. State* for granting a new trial on the basis of newly discovered evidence. He had to satisfy the court that (1) the evidence at issue came to his knowledge since his trial; (2) it was not owing to the want of due diligence that he did not acquire it sooner; (3) such evidence is so material that it would probably produce a different verdict; (4) the evidence is not merely cumulative; (5) the affidavit of the witness herself should be procured or its absence accounted for; and (6) the effect of the evidence would be more than to merely impeach the credibility of a witness. Id. at 491 (1). Hill cannot satisfy

even the threshold requirements of *Timberlake*.

The statements in Shaneka's 2012 affidavit upon which Hill relies were not new evidence in that they certainly did not come to Hill's knowledge since his trial. Accepting arguendo, the accuracy of the statements in Shaneka's affidavit, Hill was present and aware of Shaneka being at her home on the night and time of the shooting, and also aware of her knowledge that Hill was there as well. Furthermore, as noted, a witness list naming Shaneka and her 2001statement to police were provided to Hill pre-trial; therefore, Hill had ample opportunity to secure her as a witness. The failure to satisfy even one of the *Timberlake* requirements is cause for the denial of a new trial on the basis of alleged newly discovered evidence. *Davis v. State*, 283 Ga. 438, 440 (2) (660 SE2d 354) (2008).

Finally, the successor court erroneously found that Hill should be granted a new trial based on a claim of actual innocence, premised upon the 1916 case of *Joiner v. State*, 17 Ga. App. 726 (88 SE 215) (1916). Even assuming that *Joiner,* rather than *Timberlake,* is properly applied in this situation, that case provided that a new trial should be granted

if the conviction of the accused rests upon circumstantial evidence alone, and the newly discovered evidence is direct and positive in character as to the innocence of the defendant, and such testimony would, if the witness be credited, produce a different result on a second trial.

The alleged newly-discovered evidence is far from "direct and positive" as to Hill's innocence, and even if fully credited, does not refute the evidence of Hill's guilt adduced at trial; consequently, the offered evidence is unlikely to produce a different result upon retrial.

Simply, the successor court abused its discretion in granting Hill's extraordinary motion for new trial.

Judgment reversed. All the Justices concur.