NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 23, 2022

S22A0584. IN THE INTEREST OF C.C. et al., Children.

PETERSON, Presiding Justice.

The Division of Family and Children Services (DFCS) is the temporary custodian of Appellants John and Brittani Chandler's three children. The Chandlers seek a determination that they have constitutional and statutory rights to object on religious grounds to DFCS's immunization of their children. Because the juvenile court applied the wrong standard in finding that the Chandlers' religious objection was insincere, we vacate the trial court's order and remand this case for application of the correct standard.[1]

The Lumpkin County Juvenile Court temporarily removed the

---

[1] We thank the State Bar of Georgia Religious Liberty Law Section and the Barton Child Law & Policy Center of Emory University School of Law for their helpful participation in this case as amici curiae.

Chandlers' children into DFCS's custody on January 6, 2021. The Chandlers consented to an adjudication that the children were dependent within the meaning of OCGA § 15-11-2 (22),[2] and that it was contrary to the welfare of the children to be returned to a home of a parent at that time. According to a Lumpkin County court order, Brittani objected to the children being vaccinated; the Lumpkin County court ordered that no vaccinations be given without judicial approval.[3] The Lumpkin County court later issued an order of disposition incorporating a reunification plan. The case was then transferred to the Forsyth County Juvenile Court ("the juvenile court").

At a regularly scheduled review hearing for the dependency case, Brittani's counsel orally moved on religious grounds to block

---

[2] OCGA § 15-11-2 (22) defines "dependent child" as a child who: "(A) Has been abused or neglected and is in need of the protection of the court; (B) Has been placed for care or adoption in violation of law; or (C) Is without his or her parent, guardian, or legal custodian." Georgia's Juvenile Code used the term "deprived child" instead of "dependent child" before substantial revisions in 2013. See *In the Interest of M.F.*, 298 Ga. 138, 138 n.1 (780 SE2d 291) (2015).

[3] The transcript from the preliminary protective hearing where this happened is not part of the record of this case, as the hearing occurred in Lumpkin County and no party moved to supplement the record with the transcript.

DFCS from obtaining routine vaccinations for the children. Her position was stated in very broad terms; her counsel stated simply that Brittani "believe[d] that she ha[d] a religious belief that bar[red] her from allowing the children to get vaccinated." DFCS related that it sought immunization to facilitate the children's health care, schooling, and foster placement, and asserted the authority to provide "ordinary medical care" to the children under OCGA § 15-11-30.[4] At the end of the hearing, John interjected that the Chandlers' eldest child had started saying his first words when he was three months old, but then stopped talking after receiving a vaccine (for how long, John did not specify). John also mentioned having a religious objection to vaccination, without elaborating. The juvenile court denied Brittani's motion.

---

[4] OCGA § 15-11-30 reads:

A legal custodian has the right to physical custody of a child, the right to determine the nature of the care and treatment of such child, including ordinary medical care, and the right and duty to provide for the care, protection, training, and education and the physical, mental, and moral welfare of such child, subject to the conditions and limitations of the order and to the remaining rights and duties of such child's parent or guardian.

John then moved for reconsideration and for a stay of vaccination. Brittani joined in this motion and another hearing was held in conjunction with a regularly scheduled hearing on the dependency case. John testified that he did not believe COVID-19 is "real"[5] and described himself as "a conspiracy theorist." He testified that the family attended church before the COVID-19 pandemic, but was not attending at the time of the hearing because, he said, "Sundays are my little bit of time to spend with my wife because I get home late at night [during the week]. So I don't really have no family time." Construed liberally, John argued that (1) the First Amendment to the United States Constitution forbade vaccinating the children over the Chandlers' objection, (2) parents retain a statutory right to object on religious grounds to the vaccination of their children under OCGA § 15-11-30, and (3) OCGA § 15-11-30's reference to "ordinary medical care" is void for vagueness as applied to children of parents with religious objections to vaccinations.

---

[5] It is unclear whether COVID-19 vaccinations are among those DFCS seeks to procure for the children.

Brittani's counsel proffered that Brittani "could get on the stand and testify as to the church they attended, and how long they attended it. She could also . . . read certain verses from the Bible that she has her own interpretations about the [vaccination exemption] claim as far as her religious beliefs," without elaborating. Brittani did testify at the hearing, but only about other matters relating to the children's dependency case, not about vaccines or religion.

The juvenile court denied the Chandlers' motion in a written order on two principal grounds. First, the juvenile court found that the Chandlers' asserted religious objections were not sincere:

> [T]he Court finds that [the Chandlers'] argument that vaccination of the dependent children by the Department violates their free exercise of religion is specious at best. The Court finds that [the Chandlers] have not established by a preponderance of the evidence that they have a religious objection or even observe a particular religion. Contrary to, the evidence shows that they previously attended church but are no longer active, are against vaccination by personal philosophical choice based at least in part on an alleged perception after the oldest was vaccinated and that [John] is a self-proclaimed conspiracy theorist.

The juvenile court then went on to rule against the Chandlers on the merits. The juvenile court concluded that, even if the Chandlers did

have a sincere religious objection, the First Amendment to the United States Constitution would not prohibit DFCS from vaccinating the children. And the juvenile court determined that the Chandlers lacked any rights arising under OCGA § 15-11-30 to object to the vaccinations and that OCGA § 15-11-30 was not void for vagueness. The Chandlers timely filed an application for interlocutory appeal, which this Court granted under OCGA § 5-6-35 (j) because they were entitled to a direct appeal[6] of an order denying their motion for injunctive relief in ongoing dependency proceedings. See OCGA § 5-6-34 (a) (4); *In the Interest of J. P.*, 267

---

[6] "[D]irect appeal" is the term we used in *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997), and is commonly used in Georgia appellate litigation. That term can be misleading, especially in cases like this one where two different appellate jurisdiction concepts apply simultaneously. First, OCGA § 5-6-35 (a) itemizes categories of cases in which appeals must come by application for discretionary review instead of the mere filing of a notice of appeal. One of those categories is "domestic relations cases." OCGA § 5-6-35 (a) (2). But we held in *J. P.* that dependency proceedings (then called "deprivation" proceedings) are not "domestic relations cases" as the term is used in that statute, and thus no application for discretionary review is necessary. Second, OCGA § 5-6-34 generally requires that non-final orders be appealed by application for interlocutory review after the trial court grants a certificate of immediate review. See OCGA § 5-6-34 (b). But non-final orders denying injunctions may be appealed without following that process. See OCGA § 5-6-34 (a) (4). The juvenile court order was not a final order, but it did deny a request for an injunction, so it could be appealed by the Chandlers without their following the interlocutory appeal process.

6

Ga. 492 (480 SE2d 8) (1997). The Chandlers then timely filed a notice of appeal.

1. *This case has not been mooted by voluntary cessation.*

After the case was docketed in this Court, on June 6, 2022, Appellee Department of Human Services (DHS) filed a motion to dismiss the appeal as moot based on voluntary cessation. See *WMW, Inc. v. Am. Honda Mot. Co.*, 291 Ga. 683, 685 (2) (733 SE2d 269) (2012) (adopting federal voluntary cessation doctrine as a basis for mootness).[7] The motion attached as an exhibit a memorandum outlining a new official policy that DFCS shall not "seek immunizations for any child in DFCS' temporary custody if a noncustodial parent expresses a sincere religious objection to

---

[7] It is not clear why we follow federal mootness precedent, given that the power of Georgia courts to decide cases is a question of Georgia law, not federal law. See *McAlister v. Clifton*, 313 Ga. 737, 745 (873 SE2d 178) (2022) (Peterson, J., concurring) (questioning why Georgia courts apply federal mootness precedent); see also *Black Voters Matter Fund v. Kemp*, 313 Ga. 375, 391-400 (870 SE2d 430) (2022) (Peterson, J., concurring) (questioning in greater detail why Georgia courts apply federal standing precedent). But unless and until we overrule it, *WMW* remains the precedent of this Court. And we have no occasion to reconsider it in this case, given that (1) we conclude that the case is not moot even under federal principles, and (2) DHS offers no argument that Georgia law should be interpreted in a way that is more favorable to its motion than the federal principles we apply today.

7

immunization of such child, barring extreme circumstances such as a specific and unusual medical need." DFCS further represented that it no longer seeks to immunize the Chandlers' children. It requested that we dismiss the appeal as moot and vacate the juvenile court's rulings overruling Brittani's objection to vaccination and denying John's motion for reconsideration.

Four days later, on June 10, DHS filed a letter with this Court. It said that the Chandlers' eldest child received some vaccinations on June 8. It said that this was due to "miscommunication," it had fired that child's case manager, and it was "updating" its new religious-exemption policy "to more clearly explain that foster parents must be made aware of the policy and abide by it."

We deny DHS's motion. An appellee's "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *WMW*, 291 Ga. at 685 (2). In asserting mootness based on voluntary cessation, a party must bear a "heavy burden" of persuasion. Id. That said,

"cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." *Ragsdale v. Turnock*, 841 F2d 1358, 1365 (7th Cir. 1988). "The reason . . . is that government actors are more likely than private defendants to honor a professed commitment to changed ways." *Keohane v. Fla. Dept. of Corr. Sec.*, 952 F3d 1257, 1267-1268 (11th Cir. 2020) (punctuation and citations omitted). But we give no "bare deference: we probe the record to determine whether the government has met its burden, even as we grant it a presumption of good faith." *Brach v. Newsom*, No. 20-56291, 2022 U.S. App. LEXIS 16510, at *15, 38 F4th 6 (9th Cir. June 15, 2022) (en banc). Weighing against mootness due to voluntary cessation is evidence that a policy change is unilateral such that the government could "reenact[] precisely the same provision" immediately after litigation concludes. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (102 SCt 1070, 71 LE2d 152) (1982); see also *True the Vote, Inc. v. IRS*, 831 F3d 551, 561 (D.C. Cir. 2016) ("[T]here is a difference between the controversy having gone away, and simply

being in a restive stage."). This can be true even if the government does not indicate that it plans to immediately revive the challenged policy, especially where it "vigorously defends the legality of [its previous] approach" in court. *West Virginia v. EPA*, 142 SCt 2587, 2607 (2022) (punctuation and citation omitted).

These considerations compel us to reach the conclusion that this case is not moot because of voluntary cessation. DHS's new policy is not legislative in nature; it is an agency memorandum issued at the discretion of the DHS Commissioner and revocable on the same basis. And DHS defended the legality of its previous approach in briefing and at oral arguments before this Court. We note also that one of the Chandlers' own children was vaccinated a mere *two days* after the policy's adoption. DHS blames this on a miscommunication, and we have no reason to question that explanation; nor do we question the good faith with which the DHS Commissioner has adopted the new policy. But whatever the reason, a new policy found only in an agency memorandum issued at the discretion of the DHS Commissioner, that does not disclaim the

lawfulness of the previous policy that the Chandlers challenged, and that in fact fails to prevent the challenged action does not establish voluntary cessation. We therefore deny DHS's motion to dismiss the appeal as moot.

2. *We remand this case for proper sincerity analysis.*

a. *Sincerity is necessary to the Chandlers' claims.*

The Chandlers object to DFCS's vaccination of their children based on parental religious rights arising under the First Amendment to the United States Constitution and federal constitutional due-process rights that prohibit overly vague statutes.[8] They further argue that the right to object on religious grounds is one of the rights reserved to parents by OCGA § 15-11-30. As discussed below, that the Chandlers hold a sincere religious objection is a prerequisite to their claims. The juvenile court found

---

[8] The Chandlers' children, who are currently ages 6, 4, and 2, have not raised any claims before this Court, through a guardian ad litem or otherwise. The Chandlers have not sought to assert any rights on behalf of their children, and neither party makes any argument based on the children's rights or their preferences regarding religion or vaccination. We therefore have no occasion to consider the role of any rights that might belong to children themselves in disputes like the one before us, or the extent to which noncustodial parents of dependent children in DFCS custody might assert such rights.

11

that the Chandlers lack a sincere religious objection, but it did so applying at least a partially incorrect legal standard. In this posture, we decline to examine the merits of the Chandlers' arguments until the juvenile court has applied the correct standard to this threshold inquiry.

We do not unnecessarily decide the constitutionality of statutes. "As early as 1884, we recognized that principles underlying the separation of powers should also limit occasions on which we determine whether statutes violate the Georgia Constitution to those where such a decision was truly necessary." *Black Voters Matter Fund v. Kemp*, 313 Ga. 375, 394 (1) (870 SE2d 430) (2022) (Peterson, J., concurring). "Comity to a co-ordinate department of the government requires, according to many decisions of this and other courts, that causes shall not be disposed of upon constitutional grounds when it is possible to avoid such questions, without a sacrifice of the rights of parties[.]" *Bd. of Ed. of Glynn County v. Mayor of Brunswick*, 72 Ga. 353, 354-355 (1884).

And it is especially so in cases where the constitutional merits

are important, novel, and difficult. This is such a case. When a child is adjudicated dependent and taken into DFCS custody, most of the child's parents' parental rights are transferred to DFCS for the duration of DFCS's custody:

> A legal custodian has the right to physical custody of a child, the right to determine the nature of the care and treatment of such child, including ordinary medical care, and the right and duty to provide for the care, protection, training, and education and the physical, mental, and moral welfare of such child, subject to the conditions and limitations of the order and to the remaining rights and duties of such child's parent or guardian.

OCGA § 15-11-30. Thus, when the Chandlers consented to the adjudication of dependency, they were consenting to the transfer of those parental rights for the duration of DFCS's custody. The Chandlers do not challenge this generally. The Chandlers' challenge is essentially twofold. First, they argue as a matter of statutory construction that this statute does not transfer to DFCS the right to control the religious training of the children (including the right to object to vaccinations on religious grounds). And second, they argue that if the statute does purport to transfer that right, it is

13

unconstitutional, both as a matter of the religion clauses of the First Amendment and as a matter of due process vagueness as applied to religious parents. The vagueness constitutional argument is a very narrow one. And the religion clause arguments by their very nature apply only to any religious aspects of rights transferred by statute; the principal force of those arguments arises from the unique limitations the Establishment Clause may impose on the state's ability to accept and exercise the parental right to control religious training.

Although narrow, these claims still present questions of considerable potential impact. These significant questions are ones of first impression in our Court. And appellate courts of at least two other states have barred vaccinations in response to challenges like those raised by the Chandlers, albeit in the context of those states' different statutory schemes. See *In the Interest of T.C.*, 290 So3d 580, 583-584 (Fla2d DCA 2020) (applying constitutional avoidance to decline to "reach the issue of whether the Mother has a right under the federal or Florida constitutions to keep her children from

14

being immunized," and holding unlawful under Florida statutory law trial court order authorizing immunization of her children who were in foster care); *Diana H. v. Rubin*, 171 P3d 200, 201 (Ariz. Ct. App. 2007) ("Because we conclude the dependency adjudication did not extinguish [a mother's] right to determine the religious upbringing of her child and because the state has not articulated a compelling interest in immunizing [the child] sufficient to override [the mother's] objection to the procedure, we grant relief."). Here, there is a separate ground that may make deciding the difficult merits issues presented in this case unnecessary.

The sincerity of the Chandlers' religious beliefs is a necessary element of their First Amendment claims. See *Frazee v. Ill. Dept. of Employ. Servs.*, 489 U.S. 829, 833 (109 SCt 1514, 103 LE2d 914) (1989) ("Our judgments in [previous First Amendment free exercise of religion cases] rested on the fact that each of the claimants had a sincere belief that religion required him or her to refrain from [what the government required of them] . . . . Because [a claimant in one such case] unquestionably had a sincere belief that his religion

prevented him from doing [what the government required], he was entitled to invoke the protection of the Free Exercise Clause. . . . There is no doubt that only beliefs rooted in religion are protected by the Free Exercise Clause. Purely secular views do not suffice. Nor do we underestimate the difficulty of distinguishing between religious and secular convictions and in determining whether a professed belief is sincerely held. States are clearly entitled to assure themselves that there is an ample predicate for invoking the Free Exercise Clause." (punctuation and internal citations omitted)); *Thomas v. Review Bd. of Ind. Empt. Sec. Div.*, 450 U.S. 707, 713 (101 SCt 1425, 67 LE2d 624) (1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause[.]"). Their claim that OCGA § 15-11-30 is void for vagueness is also rooted in their asserted religious beliefs, because they argue that the statute is void for vagueness as applied to cases where parents have religious objections to vaccinations. And a party raising an as-applied vagueness claim has standing to assert only his own, actual rights, not hypothetical situations or the rights of others. See *Rockdale*

*County v. U.S. Enters., Inc.*, 312 Ga. 752, 768 (3) (a) (865 SE2d 135) (2021); *State v. Raybon*, 242 Ga. 858, 862 (252 SE2d 417) (1979) (per curiam).[9] So the Chandlers can raise their as-applied vagueness challenge to OCGA § 15-11-30 only if they in fact sincerely hold religious beliefs that would be infringed upon by its application.[10]

Religious sincerity is necessary for the Chandlers to pursue their statutory claim, too. OCGA § 15-11-30 provides that legal custodians of children — such as DFCS in relation to the Chandlers'

---

[9] As we noted in *Rockdale County*, "our vagueness cases all address claims brought under the United States Constitution or both the United States and Georgia Constitutions, or just refer to a 'constitutional' claim (as if which Constitution was involved would not matter)," but then merely rely on federal precedent or federally derived Georgia precedent. 312 Ga. at 761 (3) n.10. We have expressed doubt that the two Constitutions in fact identically bar vague statutes. See id. However, as in *Rockdale County*, we "need not delve further" into these matters to resolve this case. Id. The Chandlers have not argued that the Georgia Constitution is more protective against vague laws than the United States Constitution. "Accordingly, we will proceed in our analysis in reliance on the existing federal and heavily-federally-influenced Georgia precedent." Id.

[10] In their brief before this Court, the Chandlers also assert that OCGA § 15-11-30 is void for vagueness due to its use of the ambiguous term "legal custodian." But the Chandlers did not present this argument to the juvenile court, so it is not preserved for our consideration. See *Smith v. Baptiste*, 287 Ga. 23, 30 (3) (694 SE2d 83) (2010) ("Because Appellees did not raise this constitutional issue in the trial court and obtain a distinct ruling on it from that court, the issue cannot be considered for the first time in this Court.").

children — have "the right to determine the nature of the care and treatment of such child, including ordinary medical care . . . subject to . . . the remaining rights and duties of such child's parent or guardian." OCGA § 15-11-30.[11] The Chandlers argue that the remaining rights and duties recognized by OCGA § 15-11-30 include "the right to a religious exemption to immunization." But they identify no authority for the curious proposition that any religious rights preserved by OCGA § 15-11-30 can arise from religious beliefs that parents do not actually hold. Cf. *United States v. Seeger*, 380

---

[11] The Court of Appeals has held that that "the right to lodge religious objections to a child's immunizations . . . are not residual rights of the child's parents" under the precursor to OCGA § 15-11-30. *In the Interest of C.R.*, 257 Ga. App. 159, 161 (570 SE2d 609) (2002). That decision is a precedent that binds all trial courts, and so the juvenile court properly followed it below. See Ga. Const. Art. VI, Sec. V, Par. III ("The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents."). But some of us have significant concerns regarding that case's analysis. In particular, the court conflated the "right and duty" imposed by OCGA § 15-11-30 on the custodian of a deprived child — such as DFCS here — to provide for the child's "moral welfare," with the separate right vested through OCGA § 19-9-6 (11) in a fit custodial parent to provide for a child's "religious training" without being subject to a noncustodial parent's preferences. See *In the Interest of C.R.*, 257 Ga. App. at 161 (quoting former OCGA §§ 15-11-13, 19-9-6 (4)). And the Court of Appeals's brief reasoning in that case did not address the Establishment Clause issues that would arise if the government were vested with the authority to direct a child's religious training.

U.S. 163, 185 (85 SCt 850, 13 LE2d 733) (1965) (holding that whether a belief is "truly held" is "a prime consideration to the validity of every claim for [a federal statutory] exemption as a conscientious objector."). Unlike some other statutes that require only a sworn affidavit of religious beliefs, no language in OCGA § 15-11-30 relieves religious objectors from the obligation to prove sincerity to a court empowered to evaluate their credibility. Compare OCGA § 20-2-771 (e) ("For a child to be exempt from [school] immunization on religious grounds, the parent or guardian must first furnish the responsible official of the school or facility an affidavit in which the parent or guardian swears or affirms that the immunization required conflicts with the religious beliefs of the parent or guardian."). Sincerity, then, is a prerequisite to the Chandlers' statutory arguments as well.

In observing that sincerity is a necessary foundation for the Chandlers' claims, we do not mean to suggest that a court must *always* make a determination as to sincerity before considering the remainder of a religion-based claim. Courts often assume the

19

sincerity of a professed religious belief before rejecting claims that clearly fail on other grounds, partly because sincerity can be much harder to analyze than the merits of the claims themselves. See, e.g., *Kentucky ex rel. Danville Christian Acad., Inc. v. Beshear*, 981 F3d 505, 509 (6th Cir. 2020) (order); *Workman v. Mingo County Bd. of Educ.*, 419 Fed. Appx. 348, 352 (4th Cir. 2011). But here, the opposite appears to be the case: the Chandlers' claims are novel, whereas the trial court already expressed serious doubts about the sincerity of their beliefs. Under these circumstances, we decline to resolve the difficult and consequential merits of the Chandlers' claims before the juvenile court has properly addressed the preliminary question of sincerity.

b. *The juvenile court incorrectly analyzed sincerity.*

The juvenile court did determine that the Chandlers did not carry their burden of showing that their religious objections regarding vaccination are sincerely held. As recounted above, the juvenile court made the following findings regarding sincerity:

[T]he Court finds that [the Chandlers'] argument that

20

vaccination of the dependent children by the Department violates their free exercise of religion is specious at best. The Court finds that [the Chandlers] have not established by a preponderance of the evidence that they have a religious objection or even observe a particular religion. Contrary to, the evidence shows that they previously attended church but are no longer active, are against vaccination by personal philosophical choice based at least in part on an alleged perception after the oldest was vaccinated and that [John] is a self-proclaimed conspiracy theorist.

The juvenile court's conclusion of insincerity is apparent. It would be entitled to significant deference were it properly arrived at, and would likely end our analysis of this case. See *Byrd v. State*, No. S22A0254, 2022 Ga. LEXIS 178, at *7, ___ Ga. ___ (2) (c) n.5 (June 22, 2022) ("[A] factual and credibility finding . . . is generally afforded great deference on appeal."); *Sourbeer v. Robinson*, 791 F2d 1094, 1102 (3d Cir. 1986) (First Amendment case: "Unless the district court's finding of insincerity is clearly erroneous, we need go no further.").

But the juvenile court's analysis was at least partially flawed. Even if the Chandlers do not "observe a particular religion" or attend church consistently, and even if their objection to vaccination is

partly secular, they may still be able to identify a religious belief that they sincerely hold and that would be violated by the vaccination of their children. See *Frazee*, 489 U.S. at 834 ("[W]e reject the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization."); *Wiggins v. Sargent*, 753 F2d 663, 666 (8th Cir. 1985) (noting, in First Amendment case, that "a belief can be both secular and religious"). The juvenile court's sincerity finding apparently rested at least in part on an assumption to the contrary; this prevents us from affirming this ruling. See *State v. Hill*, 295 Ga. 716, 718 (763 SE2d 675) (2014) ("[I]f the trial court significantly misapplies the law . . ., [its] exercise of discretion can be upheld only if this Court can reach the conclusion that had the trial court used the correct . . . legal analysis, it would have had no discretion to reach a different judgment."). Nor can we resolve the factual question of sincerity through our own review of the record in this case. See *Oubre v. Woldemichael*, 301 Ga. 299, 307 (2) (b) (800 SE2d 518) (2017) (remanding case for resolution of factual questions).

Moreover, we would go astray were we to try to resolve the important — and difficult — legal questions this case raises about the relationship between parental religious rights and the State's custodial authority over dependent children without the trial court first making the necessary factual findings and then our being assured that determining the merits questions was truly necessary. We therefore remand this case for the juvenile court to apply the proper standard in deciding whether the Chandlers have raised a sincere religious objection.

In fairness to the juvenile court, the proper standard is not easily reducible to a simple formula; accordingly, we offer the following guidance drawn from federal precedent regarding how to evaluate religious sincerity. Ultimately, the juvenile court must determine whether the Chandlers' religious objection to the vaccination of their children is "truly held." *Seeger*, 380 U.S. at 185 (interpreting federal statute). The juvenile court's inquiry "must be handled with a light touch, or 'judicial shyness.'" *Moussazadeh v. Tex. Dept. of Crim. Justice*, 703 F3d 781, 792 (5th Cir. 2012)

23

(applying federal statute). The court should "sh[y] away from attempting to gauge how central a sincerely held belief is to the believer's religion." *Watts v. Fla. Int'l Univ.*, 495 F3d 1289, 1295 (11th Cir. 2007) (First Amendment case). And it must bear in mind that "a belief can be both secular and religious. The categories are not mutually exclusive." *Wiggins*, 753 F2d at 666. Thus, the juvenile court will have to parse out whether the Chandlers' objection is at least partly religiously motivated, as opposed to being entirely motivated by secular concerns. See *United States v. Quaintance*, 608 F3d 717, 722 (10th Cir. 2010) (interpreting a federal statute incorporating constitutional standards); *Penwell v. Holtgeerts*, 386 Fed. Appx. 665, 667 (9th Cir. 2010) (per curiam); *Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644, at *13-14 (4th Cir. Mar. 13, 1998) (unpublished opinion); *United States v. DeWitt*, 95 F3d 1374, 1376 (8th Cir. 1996) (per curiam).

The Chandlers' characterization of their objection as religious is not determinative of their sincerity. See *Ackerman v. Washington*, 16 F4th 170, 181 (6th Cir. 2021) (interpreting federal statute). The

juvenile court can weigh various factors, including (but not limited to) how long the Chandlers have asserted their professed religious belief, how much they know about it, and their reliance on "religious literature and teachings supporting the belief[.]" *Ackerman*, 16 F4th at 181. Whether the Chandlers have wavered in their actions related to vaccination "also appears to be relevant[.]" Id. So is whether they have been consistent and transparent in indicating that they have a religiously motivated objection to vaccination. See *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 Fed. Appx. 815, 819 (2d Cir. 2003) (summary order) ("We note particularly, as did the district court, evidence that plaintiff never described her religious beliefs as the basis for her refusal to immunize to her son's pediatricians, her lack of forthrightness in answering the questions of the superintendent and the district court about the basis for her objections, and the changing nature of her objections over the course of this litigation. . . . [T]he record in this case suggests to us that plaintiff does not in fact hold religious objections to immunization . . . ."). But the juvenile court should also be cautious in affording more than a

little weight to evidence that the Chandlers were inconsistent in visibly living out their religious beliefs; for example, the frequency of the family's church attendance. See id. ("[W]e recognize that religious beliefs may develop over time and that people may transgress religious beliefs that are nonetheless sincerely held . . . ."); *Ackerman*, 16 F4th at 181 (holding that a sincere believer does not lose his ability to assert religious rights "merely because he is not completely scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?" (quoting *Grayson v. Schuler*, 666 F3d 450, 454 (7th Cir. 2012) (interpreting federal statute) (punctuation omitted)).

In sum, the juvenile court's task is ultimately to assess whether the Chandlers are credible in asserting that their objection to the vaccination of their children is religiously motivated. See *Snyder v. Murray City Corp.*, 124 F3d 1349, 1352 (10th Cir. 1997) (observing in First Amendment case that "[t]he inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment . . . ."); see also *Int'l Soc. for*

*Krishna Consciousness, Inc. v. Barber*, 650 F2d 430, 439 (2d Cir. 1981) (observing in First Amendment case that key issue was whether religious belief was asserted "in good faith"). The considerations identified above are meant merely as aids to that inquiry.

If, after applying the proper standard to the existing record, the juvenile court finds that the Chandlers failed to carry their burden of showing that their objection to their children being vaccinated was motivated by a sincere religious belief, then it should deny their claims with no further analysis. See *Sourbeer*, 791 F2d at 1102 (First Amendment case: "Unless the district court's finding of insincerity is clearly erroneous, we need go no further."). If it finds that the Chandlers have carried their burden on this point, then the court may resolve the merits of their claims based on its previous order or, at the discretion of the court, may do additional analysis on the merits.

*Judgment vacated and case remanded with direction.*
*All the Justices concur.*

27