33942. THE STATE v. RAYBON.

PER CURIAM.

Raybon challenged as unconstitutional under the due process and equal protection clauses of the State and Federal Constitutions Code Ann. § 26-1503 (b) (2) pursuant to which he was accused of criminal trespass in that he knowingly and without authority entered the Atlanta terminal of Greyhound Lines, Inc., after receiving, prior to such entry, notice from the bus station terminal manager that his entry was forbidden. The trial court granted his motion to quash the accusation " . . . on the grounds that the statute as written and applied . . . does

not meet constitutional requirements of the United States Constitution and the State of Georgia Constitution . . ." The state appeals. This court reverses. Neither the statute as written nor its application to this particular case denies either due process or equal protection in violation of the State and Federal Constitutions.

The Greyhound bus station manager testified on direct examination that the statute has been used to exclude from the terminal persons classified by him as "derelicts." The procedure used is for him to read to the person to be excluded from the terminal a written warning, as follows: "Notice is hereby given that your presence upon Greyhound's terminal premises, located at 81 International Boulevard in Atlanta, Georgia, is forbidden and we request that you leave the premises immediately and refrain from coming on the premises in the future. You are further warned that failure to comply with this request may subject you to criminal prosecution as provided by law." The person is asked to sign the written notice and most persons do sign. The terminal manager testified that once such a person has received the warning he is required to remain away from the terminal premises from then on, without limitation as to time, and is not allowed to enter the terminal again for any purpose, including the transacting of business therein, such as buying or cashing in a bus ticket or purchasing food. He testified that the persons he classifies as "derelicts" often purchase bus tickets so they can contend, if challenged by him, that they are ticketholders and have legitimate reasons for being in the terminal. He testified without objection or contradiction that a regulation of the Interstate Commerce Commission gives Greyhound the right to refuse to transport a person who is under the influence of intoxicating liquor or drugs, or who is incapable of taking care of himself, or whose conduct is such, or is likely to be such, as to make him objectionable to other passengers or prospective passengers; that the I.C.C. rule does not apply to persons who are ill and who are accompanied by an attendant or nurse.

He testified without objection or contradiction that he read the warning notice to Raybon and barred him from the terminal on the night in question at

approximately 9 p.m.; that Raybon had been drinking and his speech was slurred; that he was unsteady on his feet and had been in and out of the terminal; that Raybon returned to the terminal about five hours later at approximately 2 a.m. on the next morning and was arrested; that at the time of the warning Raybon had no legitimate business to conduct in the terminal.

On cross examination, the terminal manager again testified in clear and unequivocal language that once a person has received the warning notice, he cannot again enter the terminal at any time, or for any purpose, including the purchasing of a ticket. "[T]hey cannot buy a ticket in Atlanta . . . I'm cutting off their rights to come back on my terminal premises located at 81 International Boulevard here in Atlanta. That does not preclude them from coming to another terminal premises, for instance, in Marietta, Birmingham or wherever. But I do not want them on my premises."

The transcript is devoid of evidence tending to prove that Raybon entered the Greyhound terminal either the first or the second time in order to transact business therein, to meet a friend arriving on a bus, or for any other reason relating, even remotely, to any of the legitimate business activities that are conducted, or the public accommodations that are furnished, within the terminal. Evidence admitted without objection characterized Raybon as a derelict who entered the terminal premises the first time contrary to the wishes of the terminal manager and not for the purpose of transacting business or utilizing the various public accommodations furnished by Greyhound. The record is silent as to why, or in what condition of sobriety or intoxication, Raybon re-entered the terminal after the warning. The trial court heard argument of counsel on the constitutional issues after the terminal manager left the witness stand, but no further evidence had been presented in behalf of either the state or Raybon when the court sustained the motion to quash.

Raybon contends that Code Ann. § 26-1503 (b) (2) is vague and ambiguous, is not capable of understanding by persons of ordinary intelligence, is overbroad in its reach and is "extremely unfair." An oblique attack apparently is intended to be made in this court for the first time based

upon the commerce clause.

Code Ann. § 26-1503 (b) (2) provides that: "A person commits criminal trespass when he knowingly and without authority: . . . (2) Enters upon the land or premises of another person, or into any part of any vehicle, railroad car, aircraft, or watercraft of another person, after receiving, prior to such entry, notice from the owner or rightful occupant that such entry is forbidden."

The section attacked is neither vague nor ambiguous; nor is it drawn in words that are not capable of understanding by persons of ordinary intelligence. Starkly similar wording was employed by the General Assembly in Code Ann. § 26-1503 (b) (3), which previously has been upheld against such attacks. *Daniel v. State,* 231 Ga. 270 (201 SE2d 393) (1973); *Alonso v. State,* 231 Ga. 444 (202 SE2d 37) (1973). The only substantive distinction between these two subsections of the criminal trespass statute is that subsection (b) (2) proscribes entry after notice that entry is forbidden, whereas subsection (b) (3) forbids remaining after notice to depart. The terms "enters" and "entry" in subsection (b) (2) are as definite and clear in meaning as the words "remains" and "depart" in subsection (b) (3). None of these words is beyond the comprehension of persons of ordinary understanding. *Watts v. State,* 224 Ga. 596 (163 SE2d 695) (1968). Neither does subsection (b) (2) compel or give state sanction to arbitrary or discriminatory conduct on the part of persons who invoke its sanctions. Nor is it overbroad in its reach. *Alonso v. State,* supra.

The statute requires that a person accused of its violation shall have entered "knowingly and without authority" after having been told that "such entry" is forbidden. Both criminal intent and entry "without legal right or privilege or without permission of a person legally entitled to withhold the right" thus are elements of the crime. Code Ann. § 26-401 (r); *Murphey v. State,* 115 Ga. 201 (41 SE 685) (1902). In some instances, the right of entry may not be denied. See *Bolton v. State,* 220 Ga. 632 (140 SE2d 866) (1965).

Counsel for Raybon has not pointed out to this court, and we have not been able to perceive how, on the evidence in the transcript, it can be said that the

prosecution of Raybon interfered with or burdened interstate commerce, assuming, without deciding, that an issue as to the commerce clause properly has been presented in this appeal.

Furthermore, it long has been the law that before a statute can be attacked by anyone on the ground of its unconstitutionality, he must show that its enforcement infringes upon some right of his and that the infringement results from the unconstitutional feature of the statute upon which he bases his attack. *McDonald v. State,* 222 Ga. 596, 597 (3b) (151 SE2d 121) (1966); *Reserve Life Ins. Co. v. Davis,* 224 Ga. 665, 666 (1) (164 SE2d 132) (1968). He must show that he is within the class of persons with respect to whom the Act is unconstitutional. *Bryant v. Prior Tire Co.,* 230 Ga. 137, 138 (196 SE2d 14) (1973); *Payne v. Bradford,* 231 Ga. 487 (2) (202 SE2d 422) (1973); *Lott Investment Corp. v. Gerbing,* 242 Ga. 90 (249 SE2d 561) (1978). Whatever possibilities may exist for unconstitutional applications of the statute to other defendants, it cannot be said, based on the record in this case, that the statute unconstitutionally was applied to Raybon. *Collins v. Williams,* 237 Ga. 576 (229 SE2d 388) (1976). The transcript is devoid of evidence indicating that Raybon was exercising one or more rights extended or protected by the State or Federal Constitution. The burden was on Raybon to introduce evidence in support of his contention that the statute unconstitutionally was applied to him. *McDonald v. State,* supra. Raybon's brief argues the application of the section to cases brought against a number of other persons rather than focusing upon the application of the statute to him. He does not have standing to raise the rights of other persons as to whom the statute may have been unconstitutionally applied. *McDonald v. State,* supra.

The trial court erred by sustaining the motion to quash upon the constitutional grounds asserted.

*Judgment reversed. All the Justices concur.*

ARGUED OCTOBER 11, 1978 — DECIDED JANUARY 5, 1979 — REHEARING DENIED JANUARY 23, 1979.

*Hinson McAuliffe, Solicitor, George Weaver, Assistant Solicitor,* for appellant.
*Horton J. Greene,* for appellee.