312 Ga. 752
FINAL COPY

S21A0718, S21X0719.  ROCKDALE COUNTY v.
U.S. ENTERPRISES, INC. et al.; and vice versa.

NAHMIAS, Chief Justice.

This case arises from Rockdale County's denial of an application for a permit to build a QuikTrip on property owned by William Corey and U.S. Enterprises, Inc. (the "Owners"), on the ground that the proposed facility is a "truck stop," which is a prohibited use under the County's Unified Development Ordinance ("UDO"). After the County's Board of Adjustment affirmed the denial of the permit, the Owners filed a petition in the Rockdale County Superior Court seeking, among other things, certiorari under OCGA § 5-4-1 et seq. The superior court sustained the petition for certiorari, rejecting the County's argument that the Owners' lawsuit was barred by res judicata and reversing the Board's decision on the ground that the UDO's applicable definition of a "truck stop" was unconstitutionally vague and therefore violated

due process under the Georgia Constitution. See Ga. Const. of 1983, Art. I, Sec. I, Par. I ("No person shall be deprived of life, liberty, or property except by due process of law.").

After this Court granted the County's application for a discretionary appeal, the County appealed, and the Owners then cross-appealed. For the reasons explained below, in the County's appeal, we affirm the superior court's rejection of the County's res judicata argument, reverse the part of the superior court's judgment ruling that the "truck stop" definition was unconstitutionally vague, and remand the case for further proceedings. Our holding makes it unnecessary to address the Owners' cross-appeal, which we accordingly dismiss as moot.[1]

1. The record shows the following. In August 2019, the Owners applied to the County for a land disturbance permit to construct a QuikTrip "convenience store with fuel pumps" on 7.6 acres of their property that is located near Interstate 20 and zoned C-2, which

---

[1] The County's motion to dismiss the Owners' cross-appeal on the ground that the Owners' principal brief was untimely filed is denied.

allows for a "[g]asoline station with convenience store" but prohibits a "[t]ruck stop." UDO §§ 218-1; 214-11. The site plans for the QuikTrip include four entrances to the parking lot; a 7,318 square feet convenience store; an 8,176 square feet canopy near the front of the store with 10 gasoline fueling stations for automobiles; a 4,193 square feet higher canopy with six diesel fueling stations near the back of the store; 69 parking spaces, including 14 spaces for heavy trucks; truck weigh scales; and air pumps.

The Owners submitted "Constitutional and Statutory Challenges" with their permit application, asserting, among other things, that the proposed facility did not meet the UDO's definition of a "truck stop" and that a denial of the permit would violate their right to due process under the Georgia Constitution because the definition of a "truck stop" was "overbroad, vague, and fail[ed] to set forth a standard [on] which a reasonable person could understand and rely."[2] In September 2019, the County's Planning and

---

[2] In addition, the Owners contended that a denial of the permit would amount to an unconstitutional taking of their property and violate their right

3

Development staff denied the Owners' application on the ground that the proposed QuikTrip constituted a prohibited "truck stop."

Section 214-11 of the UDO says: "Truck stops are prohibited. Furthermore, no adjoining or adjacent uses shall be physically connected or used so as to effectively create a truck stop." The UDO in effect at the time the Owners applied for the permit defined a "Truck stop" as follows:

> A prohibited use that includes any building, premises, or land in which or upon which a business, service, or industry involving the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles is conducted or rendered, including the dispensing of motor fuel or other petroleum products primarily for such heavy trucks and similar commercial vehicles and the sale of accessories or equipment for heavy trucks and similar commercial vehicles, as well as overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles.

to equal protection, and that the UDO was invalid because it was not adopted in compliance with The Zoning Procedures Law, see OCGA § 36-66-1 et seq., and because it was not attached to or incorporated by reference in the minutes of the meeting at which it was adopted. With the exception of the last claim, which the Owners try to raise in this Court in their response brief in the County's appeal, see footnote 8 below, these claims are not at issue on appeal and will not be further discussed.

UDO § 106-1 (c).[3] The UDO defines "Truck, heavy" as "[t]rucks, including truck tractors, and similar vehicles with two or more rear axles." Id. The UDO defines "Vehicle, commercial" in pertinent part

---

[3] In December 2020, three months after the superior court ruled that this definition was unconstitutionally vague, the County completely revised the definition to say:

> Truck stop: A gasoline station or gasoline station with convenience store that dispenses diesel or any other fuel or petroleum product used by heavy trucks, and which includes one or more of the following additional facilities:
>
> > (1) A parking area designed for use by heavy trucks,
> > (2) Weight scales designed for use by heavy trucks,
> > (3) A raised canopy used primarily or exclusively by heavy trucks to dispense diesel or other heavy truck fuel that is separate or distinct from the canopy or area used to dispense fuel to cars,
> > (4) A restaurant or fast food restaurant which includes either dine-in facilities or a drive-through window or both,
> > (5) Facilities for the maintenance and/or repair of heavy trucks,
> > (6) Facilities for the overnight storage of heavy trucks,
> > (7) Shower facilities made available to crews of heavy trucks,
> > (8) Graded hard surface areas designed specifically to accommodate the wide turning radius utilized by heavy trucks,
> > (9) Specially designed entrances and exits to accommodate access by numerous heavy trucks and/or
> > (10) Any other specialized facility or amenity designed specifically for the use of heavy trucks and/or the crews of heavy trucks.
>
> Truck stops are a prohibited use. Any MPD's (Multi-Product Dispenser) having a flow rate faster than five gallons per minute shall be prohibited.

This new definition is not at issue here.

5

as "[v]ehicles with a gross vehicle weight rating . . . of 10,001 pounds or more used as a part of a business."[4] Id. The UDO does not define "restaurant facilities," but it defines "Restaurant" as "[a]n establishment in which the primary purpose is preparing, serving, and consuming food and beverages." Id.

Although the UDO prohibits truck stops in all zoning districts in the County, it permits "[g]asoline station[s] with convenience store[s]" in zone C-2, where the Owners' property is located. UDO §

---

[4] The full definition of "Vehicle, commercial" is as follows:
Vehicles with a gross vehicle weight rating (GVWR) of 10,001 pounds or more used as a part of a business (including a non-profit organization), including, but not limited to any vehicle which falls into one or more of the following categories: (1) truck tractor; (2) semi-trailer, which shall include flat beds, stake beds, roll-off containers, tanker bodies, dump bodies and full or partial box-type enclosures; (3) vehicles of a type that are commonly used for the delivery of ice cream, milk, bread, fruit or similar vending supply commercial or delivery trucks. This category shall include vehicles of a similar nature which are also of a type commonly used by electrical, plumbing, heating and cooling, and other construction oriented contractors; (4) tow trucks; (5) commercial hauling trucks; (6) vehicle repair service trucks; (7) vehicles with blades attached for plowing or grading; (8) construction vehicle, such as a bulldozer, backhoe and similar vehicles; (9) a vehicle which has permanently mounted outside brackets or holders for ladders, tools, pipes, or other similar equipment; (10) passenger carrying vehicles with more than 15 passengers including the driver; (11) combinations of vehicles (such as a truck pulling a trailer or other equipment), and (12) vehicles that carry hazardous materials.

6

218-1. The UDO defines "Gasoline station with convenience store" as "[a] gasoline station that includes a retail store that sells a limited line of groceries and household items." UDO § 106-1 (c). "Overnight accommodations, showers, and overnight customer parking are prohibited" at gasoline stations with convenience stores, which "shall not be combined with any other use(s) or facility so as to create a truck stop." UDO § 218-13 (aa) (11), (12). Finally, the UDO says that all words not otherwise defined in the UDO "are intended to have the commonly accepted definitions contained in a recent edition of the Merriam-Webster Dictionary." UDO § 106-1 (b) (4).

The Owners appealed the Planning and Development staff decision to the County's Board of Adjustment. See UDO §§ 238-7; 238-8 (conferring power to and setting forth the procedures for the Board of Adjustment to decide appeals from an administrative official's decision enforcing the UDO). The Owners asserted in pertinent part that the proposed facility did not meet the UDO's definition of a "truck stop" and that the denial of the permit violated their right to due process under the Georgia Constitution. The Board

7

considered the appeal at a November 2019 meeting, during which the Owners argued, among other things, that the proposed QuikTrip did not meet the UDO's definition of a "truck stop" because the facility would be used primarily for the sale of gasoline to automobiles and did not provide overnight accommodations or parking. The Board reserved ruling on the appeal so that the parties could submit more information about the proposed facility.[5] At a meeting on December 2, 2019, the Board voted unanimously to affirm the denial of the land disturbance permit.

On December 23, 2019, the Owners filed a petition, which they

---

[5] After the November meeting, the Owners submitted to the Board, among other things, a chart saying that the proposed QuikTrip was not a "truck stop" because it would not be used for the maintenance, servicing, storage, or repair of heavy trucks; dispense fuel or other petroleum products primarily for heavy trucks; sell accessories or equipment for heavy trucks; or provide overnight accommodations, showers, overnight customer parking, or restaurant facilities. The County submitted documents arguing that the facility was a "truck stop," noting, among other things, that it would be "[o]pen 24 hours per day"; that it was designed to accommodate the turning radius requirements of heavy trucks; and that the automobile fueling and parking area would constitute 23.8% of the site while the heavy truck fueling, scale, and parking area would constitute 46.5% of the site. In response to those calculations, counsel for the Owners said in a December 2 e-mail to a County official that the Owners calculated that the heavy truck fueling, scale, and parking area would constitute only 36.3% of the site.

8

later amended, in the Rockdale County Superior Court, seeking certiorari, a declaratory judgment, an injunction, mandamus, and attorney fees.[6] The Owners claimed, in pertinent part, that the "truck stop" section of the UDO violated the Georgia Constitution because it was "overbroad and violate[d] Due Process" and that the Board of Adjustment erred by determining that the proposed QuikTrip qualified as a "truck stop."

After the defendants and respondents filed motions to dismiss, the superior court issued an order on August 7, 2020, denying the motion to dismiss the certiorari claim but granting the motion to dismiss (without prejudice) the claims for declaratory judgment, injunction, and mandamus. After further briefing by the Owners, the County renewed its motion to dismiss the certiorari claim, arguing that the lawsuit was barred by res judicata because in 1999,

---

[6] The petition named as defendants the County and the three members of the County's Board of Commissioners in their official and individual capacities. The petition named as respondents the four then-members of the Board of Adjustment in their official and individual capacities. See UDO § 238-13 (stating that review of a final decision of the Board of Adjustment may be sought through a petition for certiorari to the superior court and that in any such petition, the Board of Adjustment shall be the respondent and the County shall be the defendant).

the Owners had filed an unsuccessful lawsuit against the County challenging the denial of a land disturbance permit to build a "travel plaza" on the same property, and that the vagueness challenge was not properly raised.

On August 24, 2020, the superior court heard oral arguments on the motion to dismiss. Near the end of the hearing, the court orally ruled that res judicata did not bar the Owners' claims and that the UDO's definition of a "truck stop" was "facially invalid on due process grounds because of vagueness and ambiguity." On September 4, 2020, the court issued an order sustaining the Owners' amended certiorari petition and reversing the Board of Adjustment's decision denying the permit on the ground that the UDO's definition of a "truck stop" was vague and therefore violated due process under the Georgia Constitution. The court ruled that the terms "maintenance," "servicing," "similar commercial vehicles," "primarily," "accessories," and "restaurant" were vague. The court also said that it was unclear whether one or all of the requirements listed in the definition must be met because the definition did "not

10

consistently say 'or' or 'and'" and used "as well as," which "seem[ed] to require all requirements to be met after that phrase." The court noted that the County had argued during the hearing that the proposed QuikTrip's entrances with large turning radiuses, raised canopy, scales, 14 parking spaces, and large area for trucks were indicia of a truck stop, but that none of those standards were set forth in the "truck stop" definition. The order did not expressly mention the County's arguments that the lawsuit was barred by res judicata and that the court should not consider the vagueness challenge because the Owners had not properly raised it.[7]

This Court granted the County's application for a discretionary appeal to determine whether the superior court erred by ruling that the "truck stop" definition was unconstitutionally vague. In its appeal, the County contends that the Owners' lawsuit was barred by res judicata, that the superior court should not have ruled on the merits of the vagueness challenge because the Owners did not

---

[7] The superior court also denied the Owners' claim for attorney fees as to all defendants and respondents. That issue is not raised here.

properly raise it, and that the UDO's definition of a "truck stop" was not unconstitutionally vague. In their cross-appeal, the Owners argue that if this Court concludes that the vagueness challenge was not properly raised, the superior court erred by dismissing the Owners' claims for a declaratory judgment and an injunction related to their vagueness challenge.

As we explain below, res judicata did not bar the Owners' lawsuit, so we affirm that part of the superior court's judgment. As for the Owners' vagueness challenge, we can assume without deciding that it was properly raised, because we conclude on the merits that the superior court erred by determining that the "truck stop" definition was unconstitutionally vague; we therefore reverse that part of the court's judgment. Based on these holdings, we remand the case to the superior court for it to rule on the Owners' certiorari claim that the Board of Adjustment's decision affirming the denial of the permit was not supported by substantial evidence. See OCGA § 5-4-12 (b) ("The scope of [certiorari] review shall be limited to all errors of law and determination as to whether the

12

judgment or ruling below was sustained by substantial evidence.").

Because we decide the merits of the Owners' vagueness challenge in the County's appeal, it is unnecessary to address the Owners' cross-appeal, which we dismiss as moot. See, e.g., *Morgan County v. May*, 305 Ga. 305, 309 n.5 (824 SE2d 365) (2019); *Humphrey v. Walker*, 294 Ga. 855, 856 (757 SE2d 68) (2014).[8]

2. The County contends that the Owners' entire lawsuit was barred by res judicata. If that were true, then the superior court should not even have addressed the Owners' vagueness challenge. But the County's res judicata claim is meritless.

The doctrine of res judicata prevents "'the re-litigation of all claims which have already been adjudicated, or which could have

---

[8] The Owners also contend that the superior court erred by rejecting their claim that the UDO as a whole was invalid because it was not attached to or incorporated by reference in the minutes of the November 2006 County Board of Commissioners meeting at which it was adopted. See footnote 2 above. But the Owners raise this argument only in their response brief in the County's appeal, rather than properly enumerating it in their cross-appeal, and it is not material to the issues raised by the County, so we do not address it. See *Floyd v. Floyd*, 291 Ga. 605, 605 n.1 (732 SE2d 258) (2012) ("[A]n appellee ordinarily must file a cross-appeal to preserve a claim of error, except when the claim of error is material to, and intertwined with, a claim of error properly raised by the appellant.").

been adjudicated, between identical parties or their privies in identical causes of action.'" *Bostick v. CMM Properties, Inc.*, 297 Ga. 55, 57 (772 SE2d 671) (2015) (citation omitted). "[T]hree prerequisites must be satisfied before res judicata applies — (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Coen v. CDC Software Corp.*, 304 Ga. 105, 112 (816 SE2d 670) (2018). See also OCGA § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."). We have explained that "cause of action" means "the entire set of facts which give rise to an enforceable claim[,] with special attention given to the 'wrong' alleged." *Coen*, 304 Ga. at 112 (citations and punctuation omitted).

In this case, the record shows that in August 1999 — more than seven years before the UDO, which contains the "truck stop"

14

definition at issue in this case, was adopted — the Owners filed a petition for mandamus and declaratory relief against the County and, in their official capacities, the members of the Board of Commissioners and the Director of the Department of Public Services and Engineering. The Owners claimed that on July 22, 1999, they submitted an application for a land disturbance permit to construct a "travel plaza" on their property. Five days later, on July 27, the Board of Commissioners amended the zoning ordinance that was then in effect, which apparently did not include "travel plazas" or "truck stops" in its table of permitted uses for any zoning district, to allow truck stops only in M-2 zones.[9] On July 30, the County returned the Owners' permit application, noting that it was "not acceptable for review," and informed them that they would need to rezone the property before resubmitting the application.

The Owners then sought a writ of mandamus compelling the

---

[9] The record in this case does not contain a copy of the original or amended zoning ordinances that were at issue in the 1999 case, and there is no reference to an express definition of "truck stop" in the documents relating to the 1999 case that are in the record here.

15

defendants to review their application under the pre-amendment zoning ordinance that was in effect when the application was submitted, as well as a declaratory judgment that their application must be reviewed in accordance with the former ordinance, that a travel plaza was a permitted use under the former ordinance, and that the amendment to the former ordinance was invalid because it was improperly adopted. The Owners also asserted that if the travel plaza was not a permitted use under the former ordinance, the County's prohibiting travel plazas and truck stops in all zoning districts was unconstitutional and the ordinance was not equally enforced. The defendants argued in response that a travel plaza was not a permitted use in zone C-2 under the former ordinance because it was not listed in the table of permitted uses and that the Owners' application was incomplete and omitted required information.

In September 1999, the superior court denied mandamus relief, ruling that the defendants did not abuse their discretion in returning the Owners' application, as it was incomplete. In December 1999, the court also denied the Owners' request for a

declaratory judgment, concluding that because they had not resubmitted their application, there was no justiciable controversy. In early 2000, this Court denied the Owners' application for a discretionary appeal and dismissed their direct appeal from the superior court's orders.

Although the Owners' 1999 lawsuit and this case both relate to their seeking a permit to construct a facility on their same property, the two lawsuits are based on different sets of operative facts and different alleged wrongs. See *Coen*, 304 Ga. at 113. In the 1999 lawsuit, the Owners claimed that their application for a permit to build a "travel plaza" should be reviewed under a different zoning ordinance that was in effect many years before the UDO was enacted, that a travel plaza was permitted under the former ordinance, that an amendment to the former ordinance was invalid, and that parts of the former ordinance were unconstitutional (for reasons other than vagueness). The former ordinance and amendment apparently did not expressly define or expressly prohibit "truck stops." In this case, the Owners claimed, in pertinent

17

part, that their application for a permit to build a facility on the property was improperly denied under the express prohibition against "truck stops" in the UDO, which was adopted more than seven years after the 1999 lawsuit, and that the "truck stop" definition in the UDO was unconstitutionally vague.

Accordingly, the lawsuits involved different causes of action, and the County's argument fails at the first part of the res judicata test. See *Coen*, Ga. at 113. See also *Haley v. Regions* Bank, 277 Ga. 85, 91 (586 SE2d 633) (2003) (explaining that two causes of action were not identical for res judicata purposes because the prior action and the current lawsuit depended on a substantially different set of facts and involved questions that arose after and were not settled by the Court's decision in the prior action). Cf. *Shelley v. Town of Tyrone*, 302 Ga. 297, 308 n.15 (806 SE2d 535) (2017) (explaining that the superior court correctly ruled that the plaintiff's challenges to the town's 1997 zoning ordinance and 2004 zoning amendment were barred by res judicata or collateral estoppel, because the plaintiff had filed an unsuccessful prior lawsuit challenging that particular

18

ordinance and amendment, but leaving open the question of whether the plaintiff could challenge the town's 2015 zoning ordinance).

3. The County also contends that the superior court erred by ruling on the merits of the vagueness challenge because the Owners did not properly raise it, and that even if the challenge was properly raised, the UDO's definition of a "truck stop" was not unconstitutionally vague in violation of the due process provision of the Georgia Constitution. We need not decide whether the vagueness challenge was properly raised, because the Owners have not shown that the "truck stop" definition was unconstitutionally vague.[10]

---

[10] In the superior court and in this Court, the Owners have challenged the "truck stop" definition only under the due process clause of the Georgia Constitution, asserting no claim under the similarly worded provision in the Fourteenth Amendment to the United States Constitution. But the Owners (along with the County, and the superior court in analyzing the claim) cite no cases in which this Court clearly decided a vagueness claim based solely on the Georgia Constitution. Indeed, it appears that our vagueness cases all address claims brought under the United States Constitution or both the United States and Georgia Constitutions, or just refer to a "constitutional" claim (as if which Constitution was involved would not matter), and they then cite either United States Supreme Court decisions interpreting the federal Constitution or Georgia decisions tracing back to such federal opinions. See, e.g., *In re D. H.*, 283 Ga. 556, 556-557 (663 SE2d 139) (2008) (saying only that the appellant

(a) As we have explained before, "[t]o withstand an attack of vagueness or indefiniteness, a civil [law] must provide fair notice to

contended that a criminal statute was "unconstitutionally vague," without identifying whether the claim was raised under the United States or Georgia Constitution, and citing mostly federal cases); *105 Floyd Road, Inc. v. Crisp County*, 279 Ga. 345, 347-350 (613 SE2d 632) (2005) (analyzing a claim that a provision in a county ordinance was unconstitutionally vague "under the due process clauses of the Georgia and United States constitutions" and citing mostly federal cases).

It may be that the "due process" guaranteed by the Georgia and federal Constitutions is identical in this context, although it appears that none of this Court's decisions have engaged in the sort of careful analysis of the comparative language, history, and context of the two constitutional provisions at issue that would be needed to confidently reach that conclusion. See *State v. Turnquest*, 305 Ga. 758, 769-770 & n.8 (827 SE2d 865) (2019) (discussing this issue in a different due process context). See also *Harvey v. Merchan*, 311 Ga. 811, 825 n.13 (860 SE2d 561) (2021) ("Of course, the United States Supreme Court's construction of a federal constitutional provision does not bind our construction of a similar Georgia constitutional provision, which must be construed independently in the light of the Georgia provision's text, context, and history.").

But we need not delve further into this question to decide this case. The Owners make no argument that the Georgia Constitution provides *more* protection against vague laws than does the United States Constitution, and if the Georgia Constitution provides the *same* or *less* protection and the Owners' vagueness claim fails under the federal standard — as it does — then it would fail under the Georgia standard as well. See *Maxim Cabaret, Inc. v. City of Sandy Springs*, 304 Ga. 187, 195 (816 SE2d 31) (2018) (Peterson, J., concurring) (emphasizing the need for separate analysis of analogous Georgia and federal constitutional provisions but explaining that, "[a]s the Court's decision explains, [the appellants'] federal claim fails. And [they have] not articulated a single reason why the Georgia Constitution should be interpreted as giving them any greater rights than the United States Constitution, and so their claim under the Georgia Constitution necessarily also fails"). Accordingly, we will proceed in our analysis in reliance on the existing federal and heavily-federally-influenced Georgia precedent.

those to whom the [law] is directed and its provisions must enable them to determine the legislative intent." *Daniel v. Amicalola Elec. Membership Corp.*, 289 Ga. 437, 443 (711 SE2d 709) (2011) (citation and punctuation omitted). Thus, only when an ordinance is "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application" does it violate due process. *Edwards v. City of Warner Robins*, 302 Ga. 381, 386 (807 SE2d 438) (2017) (citation and punctuation omitted). Like statutes, ordinances are presumed to be constitutional, and the burden of proving a due process violation is on the party raising the vagueness challenge. See *Zarate-Martinez v. Echemendia*, 299 Ga. 301, 305 (788 SE2d 405) (2016). See also *Jones v. City of Marietta*, 248 Ga. 773, 773 (285 SE2d 730) (1982). "'[E]very reasonable construction must be resorted to, in order to save [an ordinance] from unconstitutionality.'" *Ga. Dept. of Community Health v. Northside Hosp., Inc.*, 295 Ga. 446, 448 (761 SE2d 74) (2014) (citation omitted). See also *Warshaw v. City of Atlanta*, 250 Ga. 535, 536 (299 SE2d 552) (1983). Moreover, there is generally a greater tolerance of

uncertainty in "'enactments with civil rather than criminal penalties[,] because the consequences of imprecision are qualitatively less severe.'" *Daniel*, 289 Ga. at 443 (citation omitted). See also *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (102 SCt 1186, 71 LE2d 362) (1982) (noting that "economic regulation is subject to a less strict vagueness test"). The interpretation of a statute or ordinance and the determination of whether such a law is unconstitutionally vague are questions of law that we review de novo on appeal. See *Jenkins v. State*, 284 Ga. 642, 645 (670 SE2d 425) (2008).

The Owners argue in this Court, as they did in the superior court, that the "truck stop" definition in the UDO was unconstitutionally vague on its face. And the superior court's order, particularly when construed in light of the court's oral ruling, appears to decide only that facial challenge, without expressly addressing whether the definition was vague as applied to the Owners' proposed QuikTrip. As we have repeatedly made clear, however, "'[v]agueness challenges . . . that do not implicate First

Amendment freedoms must be examined in the light of the facts of the case to be decided.'" *Wilbros, LLC v. State*, 294 Ga. 514, 520 (755 SE2d 145) (2014) (quoting *Parker v. City of Glennville*, 288 Ga. 34, 35 (701 SE2d 182) (2010)). Accord *Village of Hoffman Estates*, 455 U.S. at 495 n.7. "In other words, outside of the First Amendment context, if a challenger's as-applied vagueness challenge fails, then his facial challenge also fails." *Smallwood v. State*, 310 Ga. 445, 447 (851 SE2d 595) (2020). "'A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.'" *Catoosa County v. R.N. Talley Properties, LLC*, 282 Ga. 373, 375 (651 SE2d 7) (2007) (quoting *Village of Hoffman Estates*, 455 U.S. at 495). See also *State v. Raybon*, 242 Ga. 858, 862 (252 SE2d 417) (1979) (rejecting the defendant's facial vagueness challenge to a criminal trespassing statute that implicated no constitutionally protected conduct, in part because the defendant presented no evidence that the statute was vague as applied to him and he did "not have standing to raise the rights of other persons as to whom the statute may have been

unconstitutionally applied").

The Owners' vagueness challenge implicates no speech protected by the First Amendment. Thus, the superior court should have determined whether the "truck stop" definition in the UDO was unconstitutionally vague as applied to the Owners' proposed use of their property before the court considered whether the definition was vague on its face.[11] As we explain below, the Owners have not

---

[11] Whether a law "abuts upon sensitive areas of basic First Amendment freedoms [and] operates to inhibit the exercise of those freedoms" is a consideration in determining whether the law is unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (92 SCt 2294, 33 LE2d 222) (1972) (cleaned up). The superior court cited *Grayned* and similar cases, including *105 Floyd Road*, 279 Ga. at 347, in its order ruling that the "truck stop" definition was unconstitutionally vague, but because no protected expression is at issue in this case, the court relied too heavily on such cases (as do the Owners).

A distinct legal doctrine — the First Amendment "overbreadth" doctrine — "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (122 SCt 1389, 152 LE2d 403) (2002). Although the Owners repeatedly asserted in the superior court that the "truck stop" definition violated due process because it was "overbroad," they made no argument concerning the First Amendment, and the UDO's "truck stop" provisions do not prohibit any protected speech, much less "a substantial amount." Id. See also *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (130 SCt 2705, 177 LE2d 355) (2010) (explaining that a "vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression" and that otherwise, the due process vagueness and the First Amendment overbreadth doctrines "would be substantially redundant"). The overbreadth doctrine is not applicable to this case.

24

established that the "truck stop" provision was unconstitutionally vague as applied to the proposed use of their property, so their facial vagueness challenge also fails.

(b) As we recounted in Division 1 above, at the time the Owners applied for the land disturbance permit, the UDO defined a "truck stop" as:

> A prohibited use that includes any building, premises, or land in which or upon which a business, service, or industry involving the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles is conducted or rendered, including the dispensing of motor fuel or other petroleum products primarily for such heavy trucks and similar commercial vehicles and the sale of accessories or equipment for heavy trucks and similar commercial vehicles, as well as overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles.

UDO § 106-1 (c). The Owners' property plainly constitutes "land" on which a "business" — the proposed QuikTrip — would be conducted. We therefore turn to the remainder of the definition.

First, to qualify as a "truck stop," the definition required that the business "involv[e] the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles." UDO § 106-1 (c).

25

In its order ruling that the "truck stop" definition was unconstitutionally vague, the superior court concluded that the terms "maintenance" and "servicing" were ambiguous. The UDO does not define those two terms, so — as the UDO directs — we look to their definitions in "a recent edition of the Merriam-Webster Dictionary," UDO § 106-1 (b) (4), construed in the context of the "truck stop" definition.[12] As defined in Merriam-Webster's, in this context "maintenance" refers to "the act of maintaining" and "maintain" means "to keep in an existing state (as of repair)." See

---

[12] Because the UDO containing the "truck stop" definition at issue was enacted in 2006, we cite the 2006 edition of Merriam-Webster's Dictionary and Thesaurus ("Merriam-Webster's"). To show that these are commonplace definitions of the pertinent words, we also cite the 2007 edition of another widely used dictionary, the Webster's New World College Dictionary ("Webster's").

The County argues at one point that "[b]ecause the phrase 'truck stop' has a commonly understood meaning that clearly applies to the Owners' facility, it is not unconstitutionally vague." But where a term is specifically defined in a law, we must apply that definition, not interpret the term as if it was not expressly defined. Indeed, the UDO expressly states that "*[w]hen no definitions are provided* within an individual chapter, article, or section of the UDO, words and phrases used in the UDO shall have the meaning established by the definitions provided in [Section 106-1 (c), where the "truck stop" definition is located]," and that "[a]ll *remaining* words used in the UDO are intended to have the commonly accepted definitions contained in a recent edition of the Merriam-Webster Dictionary." UDO § 106-1 (b) (2) and (4) (emphasis added).

also Webster's (defining "maintenance" specifically as "the work of keeping a building, machinery, etc. in a state of good repair"). Merriam-Webster's defines "servicing" in this context as "to do maintenance or repair work on or for." See also Webster's (defining "servicing" as "to make or keep fit for service, as by inspecting, adjusting, repairing, refueling, etc.").

In light of these defined and commonly accepted meanings, the "truck stop" definition sufficiently informed a person of ordinary intelligence that to constitute a "truck stop," a business must involve, among other things, the maintenance (i.e., keeping in a state of repair), servicing (i.e., doing repair work, such as by inspecting, adjusting, repairing, or refueling), storage, or repair of heavy trucks and similar commercial vehicles. Thus, the superior court incorrectly concluded that the words "maintenance" and "servicing" were impermissibly vague on their face.

Following the requirement that a "truck stop" involve the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles, the "truck stop" definition listed

27

several other requirements, which all appear in a lengthy phrase after the word "including." To begin with, we generally read the word "including" in this context — following a general phrase and preceding a litany of specific terms — as introducing an exhaustive list of requirements rather than just some illustrative examples. See *Premier Health Care Investments, LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 42-44 (849 SE2d 441) (2020). See also Merriam-Webster's (defining "include" as "to take in or comprise as a part of a whole"). Indeed, the UDO uses the phrase "including but not limited to" in other provisions as a means of introducing non-exhaustive examples. See, e.g., UDO §§ 106-1 (c) (defining "Canopy" in pertinent part as "[a] roof structure constructed of rigid materials, *including but not limited to*, metal, wood, concrete, plastic or glass, which is attached to and supported by a building" (emphasis added)); 302-44 (a) (2) ("A land disturbance permit shall be issued to authorize all activities associated with development activity; *including, but not limited to*, clearing and grubbing, grading and the construction of such improvements as streets, surface parking areas and drives,

stormwater drainage facilities, sidewalks, or other structures permanently placed on or in the property except for buildings, signs or other structures requiring the issuance of a building permit." (emphasis added)).

The superior court concluded that an ordinary person could not discern whether one, all, or some combination of the listed requirements in the phrase following "including" must be met, because the phrase uses the words "and," "as well as," and "or." But the words "and" and "as well as" are normally understood in a conjunctive sense, and the context of the "truck stop" definition does not suggest a contrary interpretation. See Merriam-Webster's (defining "and" as "used to indicate connection or addition esp[ecially] of items within the same class or type or to join words or phrases of the same grammatical rank or function"; and defining "as well as" as "and in addition" and "in addition to"). See also Webster's (defining "and" as "in addition; also; as well as"; and defining "as well as" as "in addition to"); *Crooks v. Harrelson*, 282 U.S. 55, 58 (51 SCt 49, 75 LE 156) (1930) (construing the word "and" between two

phrases in a tax statute to mean "not one or the other, but both" and concluding, "[w]e find nothing in the context or in other provisions of the statute which warrants the conclusion that the word 'and' was used otherwise than in its ordinary sense").

Conversely, the word "or" normally "indicate[s] an alternative," as Merriam-Webster's explains. See also Webster's (defining "or" as "a coordinating conjunction introducing an alternative" such as "introducing any of the possibilities in a series, but usually used only before the last"); *Gearinger v. Lee*, 266 Ga. 167, 169 (465 SE2d 440) (1996) (explaining that "or" is naturally understood as a "disjunctive term" that "mark[s] an alternative and present choice" and "where a legislative provision is phrased in the disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the legislative intent" (citation and punctuation omitted)). In sum, an ordinary speaker of the English language generally would not say that "or" is equivalent to "and" or "as well as."

Applying these commonly understood meanings as they appear

in the context of the phrase beginning with "including" in the "truck stop" definition, an ordinary person would understand that the word "and" signifies that a "truck stop" must include the dispensing of motor fuel or other petroleum products primarily for heavy trucks and similar commercial vehicles in addition to the sale of accessories or equipment for such trucks and vehicles. The next term, "as well as," precedes a list of four distinct alternatives connected by the word "or," indicating that in addition to the dispensing and sale requirements, a "truck stop" must have at least one of those alternatives: overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles. Accordingly, to constitute a "truck stop," the business must: (1) involve the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles; (2) dispense motor fuel or other petroleum products primarily for heavy trucks and similar commercial vehicles; (3) sell accessories or equipment for heavy trucks and similar commercial vehicles; and (4) provide at least one

31

of the following — overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles.

Finally, the superior court concluded that the terms "similar commercial vehicles," "restaurant facilities," "primarily," and "the sale of accessories or equipment for heavy trucks and similar commercial vehicles" were ambiguous. But as noted in Division 1 above, the UDO clearly defines "Vehicle, commercial" and "Restaurant." See UDO § 106-1 (c). And "primarily" means "for the most part." Merriam-Webster's. See also Webster's (defining "primarily" as "mainly; principally"). As many courts have held, the use of that qualitative word does not render a law impermissibly vague. See, e.g., *United States v. Gibson*, 998 F3d 415, 419-420 (9th Cir. 2021) ("The phrase 'primarily used by children' is not indeterminate."); *In re Kelly*, 841 F2d 908, 916 (9th Cir. 1988) ("[T]he modifier 'primarily' is not a word that is ambiguous or difficult to understand."); *Pizza di Joey, LLC v. Mayor of Baltimore*, 235 A3d 873, 907 (Md. 2020) (holding that "primarily engaged in" has a

"generally accepted meaning[ ]"). Similarly, there is no mystery in the requirement that a "truck stop" sell "accessories or equipment for heavy trucks and similar commercial vehicles." See Merriam-Webster's (defining "accessory" in this context as "something helpful but not essential"; and defining "equipment" as "things used in equipping: outfit," and "equip" as "to supply with needed resources" and "to make ready: prepare"). See also Webster's (defining "accessory" as "a piece of optional equipment for convenience, comfort, appearance, etc."; and defining "equipment" as "the special things needed for some purpose; supplies; furnishings; apparatus, etc."); UDO § 106-1 (c) (defining "Truck, heavy" and "Vehicle, commercial").

Thus, the pertinent definition of a "truck stop," construed in light of the terms defined in the UDO and in the dictionary it points to as well as the tools we customarily use when interpreting legal texts, is comprehensible. To be sure, the definition could have been more artfully drafted — as the revamped definition enacted after the superior court's order illustrates, see footnote 3 above — but "an

33

ordinance need not regulate with mathematical certainty to comport with due process." *Burton v. Glynn County*, 297 Ga. 544, 548 (776 SE2d 179) (2015) (citation and punctuation omitted). See also *JIG Real Estate, LLC v. Countrywide Home Loans, Inc.*, 289 Ga. 488, 492 (712 SE2d 820) (2011) ("Where the legislative intent is clear and the statute provides fair notice of its meaning, this Court will not deem a statute unconstitutionally vague merely because it 'could be more artfully drafted.'" (citation omitted)). And although it may be difficult in this case to determine whether the proposed QuikTrip meets the requirements of the "truck stop" definition, the fact that a case is close does not render an ordinance unconstitutionally vague.

> The uncertainty in a statute which will amount to a denial of due process of law is not the difficulty of ascertaining whether close cases fall within or without the prohibition of the statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved[.]

*Briggs v. State*, 281 Ga. 329, 330 (638 SE2d 292) (2006) (citation and punctuation omitted). See also *United States v. Williams*, 553 U.S.

285, 306 (128 SCt 1830, 170 LE2d 650) (2008) (explaining that "[c]lose cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof"); *Banta v. State*, 281 Ga. 615, 617 (642 SE2d 51) (2007) (noting that "'the fact that application of the statute's standards sometimes requires an assessment of the surrounding circumstances to determine if the statute is violated does not render it unconstitutional'" (citation omitted)).[13]

The Owners argue that there are a variety of hypothetical scenarios to which the "truck stop" definition may be less intelligibly applied. For example, in arguing that the term "maintenance" is vague, the Owners posit that the "truck stop" definition would be unconstitutional if applied to a farmer who used his barn to change

---

[13] As the superior court noted in its order, in arguing that the "truck stop" definition was not vague, the County confusingly asserted that the proposed QuikTrip clearly fell within the definition because the QuikTrip had certain features that were not expressly mentioned in the definition, like a raised canopy and weigh scales. But the County's reliance on features that were not listed in the "truck stop" definition did not render the definition vague; instead, it *could* suggest that the Board of Adjustment's decision that the Owners' proposed facility qualifies as a "truck stop" was not supported by substantial evidence. That issue, as we discuss below in Division 4, is for the superior court to determine in the first instance.

a tire on his dual rear-axle pickup truck because the pickup truck would be a "heavy truck" as defined by the UDO and changing the tire would amount to "maintenance." The superior court similarly posed questions about hypothetical situations to illustrate its conclusion that "maintenance" was indefinite, asking, "If you add a quart of oil[,] are you 'maintaining' your [pickup] truck?" These abstract scenarios and questions fail to construe the term "maintenance" in light of its commonly accepted definition or within the context of the entire "truck stop" definition, as we have interpreted it above.

But in any event, the Owners' (and the superior court's) reliance on hypotheticals is of no avail, because the Owners have not identified any aspect of the proposed use of their own property — the specific QuikTrip proposal at issue in this case — to which the definition of "truck stop," as properly interpreted, cannot be intelligibly applied and would instead require pure guesswork at its meaning. See *Holder v. Humanitarian Law Project*, 561 U.S. 1, 22-23 (130 SCt 2705, 177 LE2d 355) (2010) (rejecting the plaintiffs' as-

36

applied vagueness challenge to a criminal statute where they argued in part that certain statutory definitions would be difficult to apply in hypothetical situations, because even if there might be "theoretical doubts" regarding the definitions, the plaintiffs' "'case present(ed) no such problem,'" so the plaintiffs could not "seek refuge in imaginary cases" (citation omitted)). See also *Catoosa County,* 282 Ga. at 375; *Raybon,* 242 Ga. at 862. Indeed, even though the Owners may disagree with the conclusion reached by the Board of Adjustment that their proposed use of the property constituted a "truck stop," the Owners do not assert that the definition of a "truck stop" was impermissibly vague as applied to their proposal.

In sum, the UDO's "truck stop" definition provided fair notice to the Owners of the sort of facilities that were prohibited. The Owners have not established that the "truck stop" definition was unconstitutionally vague as applied to their proposed QuikTrip, and the superior court therefore erred by concluding that the definition was vague on its face. See *Smallwood,* 310 Ga. at 447. Accordingly, we reverse that part of the court's judgment.

37

4. Because we have concluded that the Owners' lawsuit was not barred by res judicata and that the applicable "truck stop" definition in the UDO was not unconstitutionally vague, we remand the case for the superior court to rule on the Owners' certiorari claim that the Board of Adjustment's decision affirming the denial of the permit was not supported by substantial evidence. We express no opinion on that issue.

*Judgment affirmed in part and reversed in part, and case remanded with direction in Case No. S21A0718. Appeal dismissed in Case No. S21X0719. All the Justices concur, except Ellington, J., who dissents as to Division 3.*

ELLINGTON, Justice, dissenting in part.

The majority opinion does a fine job of deconstructing the section of the version of the Unified Development Ordinance applicable to these property owners that defines "truck stop," Section 106-1 (c), and reconstructing it for clarity. On remand, the superior court will consider whether, under the majority opinion's construction of the applicable version of the ordinance, the Board of Adjustment's decision to affirm the denial of the permit on the basis that the owners' planned QuikTrip station constitutes a truck stop, which is a prohibited use under Section 214-11 of the ordinance, was "sustained by substantial evidence." The owners may yet prevail.

Be that as it may, in resolving the owners' constitutional challenge to the ordinance, the superior court was tasked with deciding whether the applicable iteration of the ordinance sufficiently informed a person of ordinary intelligence whether a proposed use of property was an otherwise-permissible gasoline

39

station with a convenience store or whether it was instead an impermissible truck stop. Due process demands that Rockdale County's truck stop ordinance be sufficiently plain so that the County's Department of Planning and Development could render a decision about whether to permit the owners' intended use of their property that was not arbitrary or discriminatory and so that the County's Board of Adjustment could fairly review the denial of a permit.[14] The record shows that the Board of Adjustment affirmed the department's denial of the owners' application for a permit *solely* on the basis that the owners' intended use of their property

---

[14] See *Morgan County v. May*, 305 Ga. 305, 307 (2) (824 SE2d 365) (2019) ("To satisfy due process, a challenged statute or ordinance must give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated and provide sufficient specificity so as not to encourage arbitrary and discriminatory enforcement." (citation and punctuation omitted)); *Stanfield v. Glynn County*, 280 Ga. 785, 787 (2) (631 SE2d 374) (2006) (Where regulation of owners' use of their land is vague and ambiguous, the ambiguities in the language employed in an ordinance must be resolved in favor of the free use of property.); *105 Floyd Road, Inc. v. Crisp County*, 279 Ga. 345, 348 (613 SE2d 632) (2005) (Zoning ordinances, like any legislation, "must be definite and certain to be valid, and when it is so vague and indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the first essential of due process of law." (citation and punctuation omitted)).

constituted a truck stop, as defined in Section 106-1 (c).[15] After

hearings, the superior court sitting as a court of review of the

administrative decision determined that the ordinance then in

effect was *not* sufficiently plain for the officials who are responsible

for deciding whether to permit the owners' intended use of the

property to fairly decide whether the intended use constituted a

truck stop.[16] Seeing the tortured path the majority opinion takes to

---

[15] The Department of Planning and Development's initial review of the owners' proposed QuikTrip development reflected that the Planning Department's overall analysis was "[Section] 214-11 – The use is prohibited," with additional comments about signage and lighting, but with no explanation of how the proposed development constituted a prohibited use. Similarly, the Zoning Department's review of the owners' proposed QuikTrip development contained the analysis that "[Section] 214-11 – The proposed use is prohibited," with citations to other code sections about required signage, landscaping, state permits for underground tanks, etc., that did not relate to the truck stop classification, but with no explanation of how the development constituted a prohibited use. The permit was denied. The Director of Planning and Development upheld that decision, and the Board of Adjustment affirmed, stating only that the Board "rendered a decision to affirm the administrative decision of the Planning and Development Director to uphold the denial of the land disturbance permit due to the prohibition of 'Truck Stops' in Section 214-11 of the Rockdale County Unified Land Development Code."

[16] The superior court determined that the definition of a truck stop was vague and ambiguous, based on certain terms used in Section 106-1 (c), such as "similar commercial vehicle" and "servicing," that in context could have different meanings, and based on the inconsistent use of "and," "as well as," "or," etc., to connect or distinguish the definitional terms. Because of this, the superior court concluded that the truck stop ordinance left the "citizen property owner . . . to guess at the requirements of this ordinance. Is one requirement

impose clarity on the applicable version of the ordinance, I find the superior court's assessment to be persuasive.[17] If it takes not just lawyers, which many of the local officials charged with making these decisions on a regular basis are not, but constitutional legal scholars, so much research and analysis to decide whether, and to explain why, an ordinance is not vague and ambiguous, perhaps we should not be so willing to override the superior court's decision to the contrary.

In my view, the superior court's analysis was sound and should not be disturbed. Therefore, I respectfully dissent as to Division 3.

---

enough? If not, how many are required? Are all requirements to be met?" The superior court concluded that the ordinance "as written is the antithesis of ascertainable standards[,]" which are "required to impair the free use of property by a landowner[,]" and that the ordinance left the enforcement of the zoning limitations "to the discretion of county officials." The superior court ruled that the ordinance "contains insufficient objective standards and guidelines to meet the requirements of due process." Not only is the ordinance legally ambiguous, subject to multiple interpretations, and susceptible to arbitrary enforcement, the superior court concluded, "it fails the test of common sense."

[17] I take no issue with the majority opinion's reference to dictionaries to determine the commonly accepted meaning of words not specifically defined in the ordinance. But it cannot be contradicted that the plainest of words can, quite unintentionally, be structured into sentences and paragraphs that are genuinely confusing.

Decided November 2, 2021.

Unified development ordinance; constitutional question.

Rockdale Superior Court. Before Judge Mumford.

*Freeman Mathis & Gary, William J. Linkous III; M. Qader A. Baig*, for appellants.

*The Barnes Law Group, Roy E. Barnes, Benjamin R. Rosichan*, for appellees.